**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Larry LIEFER, George Sharos, and Charles Patterson, Defendants-Appellants.**

**Nos. 84–2339, 84–2353 and 84–2370.**

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1985.

Decided Dec. 4, 1985.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 16, 1986.

Lawrence J. Fleming, London, Greenberg & Pleban, St. Louis, Mo., Robert H. Rice, Rice Law Office, Belleville, Ill., Joshua Sachs, Chicago, Ill., for defendants-appellants.

Marsha Johnson, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before WOOD and CUDAHY, Circuit Judges, and WRIGHT, Senior Circuit Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants Larry Liefer, George Sharos, and Charles Patterson were convicted in a jury trial of conspiracy to distribute more than one thousand pounds of marijuana in violation of 21 U.S.C. § 846 (1982). The district court sentenced each defendant to eight years in prison. The defendants raise a number of issues on appeal. We affirm the judgment of the district court.

Richard Schair and Jeffrey Bayles, both unindicted co-conspirators, headed this southern Illinois marijuana distribution conspiracy. Schair was responsible for obtaining the supply of marijuana. Bayles oversaw sales and distribution. William Slater, Jeffrey Cox, Vernon Michaels, and Jim Michaels worked for Bayles. Daniel Richardson and Mel Hood were guards at the "stash house" where Bayles stored the marijuana pending distribution. Of the above, only Cox and Slater were indicted with the defendants, and both plead guilty and agreed to testify for the government. Most of the unindicted co-conspirators, including Schair and Bayles, agreed to testify for the government in return for some form of leniency.

Involved are two separate deliveries of marijuana. The first delivery, in late January or early February of 1981, totalled twenty-five hundred pounds. It took the organization approximately one week to distribute the marijuana to its customers. In March of 1981, a second delivery was received, this one of seven thousand pounds. Both shipments were carefully weighed and inventoried. Two sets of distribution records were maintained.

The three defendants in this case were tried together. The government introduced evidence that defendant Charles Patterson was a middleman who obtained large quantities of the marijuana for resale. The government alleged that a portion of Patterson's marijuana was delivered to Larry Liefer, who stored it on his farm pending subsequent distribution. The government also contended that defendant George Sharos purchased a large quantity of the marijuana from Schair and Bayles on behalf of an individual named Brian Biagini. The jury found all three defendants guilty.

## I. LARRY LIEFER

Defendant Larry Liefer argues that the district court erred by admitting testimony about another crime under Fed.R.Evid. 404(b), by failing to declare a mistrial, by refusing to give an instruction on a lesser included offense, and by denying Liefer's motions for acquittal and for severance.

### A. EVIDENCE OF ANOTHER CRIME

Defendant Liefer contends that the trial court erred in allowing John Shipley to testify about a time, apart from the charged conspiracy, when Shipley went to Liefer's farm to pick up a large quantity of marijuana. Liefer contends that this testimony was not admissible under Fed.R.

---

* The Honorable Eugene A. Wright, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

Evid. 404(b), because it was evidence of another crime not part of the charged conspiracy. Liefer objected to the testimony during a sidebar conference prior to Shipley taking the stand, but the trial court admitted the evidence over Liefer's objection.

Shipley testified that on a prior occasion, during the time period of, but not as part of, the charged conspiracy, Jack Birtwell sent him to Liefer's farm to pick up a load of marijuana that Liefer had been unable to distribute because of the marijuana's low quality. Liefer devoted much of his defense to refuting Shipley's testimony. Liefer argued that either Birtwell or Shipley had stored the marijuana on Liefer's property without his knowledge or consent. Liefer maintained that Shipley came to pick up the marijuana because Liefer had found the marijuana and ordered Shipley to get the marijuana off his (Liefer's) property. Liefer contends that he should not have been forced to defend against these inadmissible allegations of past misconduct.

The government asserts that the evidence was admissible because proof of a conspiracy to distribute narcotics requires a showing of specific intent. Liefer argues, on the other hand, that his defense relied only on a denial that he had ever received the distribution of marijuana involved in the indictment and thus intent was not controverted. The issue, therefore, is whether the government may present other-acts evidence, regardless of whether the defendant disputes intent, knowledge, or the other bases for Rule 404(b) exceptions, as long as specific intent is a required element of the crime.

Fed.R.Evid. 404(b)[1] does not permit the government to introduce evidence of other acts by a defendant in order to prove the defendant's propensity to commit the crime for which the defendant is charged. *United ed States v. Shackleford*, 738 F.2d 776, 779

(7th Cir.1984). Rule 404(b) does not bar such evidence, however, if the government offers the evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Because of the potentially prejudicial nature of such evidence, *see United States v. Phillips*, 401 F.2d 301, 305 (7th Cir.1968), and the danger of jury misuse, the trial court must carefully assess all evidence offered by the government under Rule 404(b) to ensure that the evidence (1) falls within a Rule 404(b) exception and (2) has probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant. Fed.R.Evid. 403.

In a case such as this one, the government may want to introduce evidence of other bad acts by a defendant that are similar to the acts charged in the indictment. In *Shackleford, supra*, we reaffirmed the principle that Rule 404(b) does not give the government an unfettered right to introduce bad acts evidence. We laid down guidelines to ensure that the evidence presented by the government actually goes to prove matters at issue rather than the defendant's propensity to commit the crime charged. *See* 738 F.2d at 779.

We note initially that Liefer contends that the holding of *Shackleford* controls the outcome of this case. In *Shackleford*, we reversed the defendant's conviction because the trial court had allowed the government to introduce evidence of a prior act of extortion by the defendant. We concluded that the evidence was only probative of the defendant's propensity to commit the crime charged. 738 F.2d at 779–84. We reached such a conclusion only after carefully analyzing the government's evidence in light of the particular facts of that case, the elements of the crime charged, and Rule 404(b). Therefore, *Shackleford* provides us not with an answer, but rather with a method of analyzing Liefer's claim.

1. Fed.R.Evid. 404(b) provides:

(b) Other crimes, wrongs, or acts

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Shackleford*, we used a four-part test to analyze whether the trial court should have admitted evidence of the defendant's prior misconduct under Rules 404(b) and 403:

> [a]dmission of evidence of prior or subsequent acts will be approved if (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue (*i.e.* such that 'the consequential fact may be inferred from the proffered evidence,' 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[8] at 404–49 (1982)), (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

738 F.2d at 779. *See also United States v. Arnold*, 773 F.2d 823, 832–33 (7th Cir. 1985); *United States v. Chaimson*, 760 F.2d 798, 804 (7th Cir.1985); *United States v. Boroni*, 758 F.2d 222, 224 (7th Cir.1985); *United States v. Hyman*, 741 F.2d 906, 912 (7th Cir.1984); *United States v. Kane*, 726 F.2d 344, 348 (7th Cir.1984).

The government contends that Shipley's testimony was relevant to issues other than Liefer's propensity to commit the crime charged "since it showed Liefer's intent and knowledge about marijuana distribution and his plan to carry on the business by receiving and storing large quantities at his farm." Liefer argues that intent to distribute marijuana was merely a formal issue at trial, because if he conspired with a group possessing over one thousand pounds of marijuana, his intent to help distribute it was clear. Liefer contends that because his defense was based upon a

denial that he ever possessed the marijuana, *Shackleford* must control. *See* 738 F.2d at 781 (intent must be more than a formal issue).

In *Shackleford*, however, the government did not need to produce evidence of the defendant's intent unless the defendant raised lack of intent as a defense, because specific intent was not an essential element of the offense of attempting to collect a debt by use of extortionate means in violation of Title 18, U.S.C. § 894(a) (1976). In Liefer's case, the government had to prove that the defendants conspired together, 21 U.S.C. § 846, to distribute, *with intent to distribute*, marijuana in a quantity in excess of 1,000 pounds, 21 U.S.C. § 841(a)(1) (emphasis added).[2]

As we noted in *Shackleford*, this circuit has

> distinguished between situations in which intent is in issue because the government must show specific intent as an essential element of the crime and when intent is only a formal issue that can be inferred from the act. When the crime charged requires proof of specific intent, we have held that, because it is a material element to be proved by the government, it is necessarily in issue and the government may submit evidence of other acts in an attempt to establish the matter in its case-in-chief, assuming the other requirements of Rules 404(b) and 403 are satisfied.

738 F.2d at 781. The decision in *Shackleford*, therefore, applies only to crimes that do not include an element of specific intent. Intent is never merely a "formal issue" when the defendant is charged with a specific intent crime.

---

**2.** Liefer was charged under Title 21 U.S.C. §§ 841(a)(1), 846 (1982). Those statutes provide:

> § 841. (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

> § 846. Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

▪ In *United States v. Weidman,* 572 F.2d 1199 (7th Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), the government had to establish the defendant's specific intent to defraud in order to prove mail fraud. We held that the government was entitled to introduce evidence of prior similar bad acts even though the defendant had not disputed intent. 572 F.2d at 1202. In *United States v. Chaimson,* 760 F.2d 798 (7th Cir.1985), we rejected an argument similar to the one Liefer raises here. In *Chaimson* we held that a defendant charged with a specific intent crime could not prevent the government from introducing other-acts evidence to prove intent by denying that he committed the act itself and conceding the intent issue. *Id.* at 805–808 (rejecting Second Circuit cases that allowed the defendant to concede intent and thereby exclude other-acts evidence); *cf., id.* at 813 (Cudahy, J., concurring) (government should not be allowed to flood the courtroom with other-crimes evidence simply because the crime was one of specific intent). *See also Arnold,* 833 (reaffirming this rule). In Liefer's case, specific intent to distribute was an essential element of the crime, and therefore intent was not merely a formal issue as it was in *Shackleford.* Because the government charged Liefer with a specific intent crime, it had the right to present other-acts evidence regardless of Liefer's attempt to concede the issue. There was no courtroom other-crimes flood.[3]

▪ Having decided that Shipley's testimony was "directed towards establishing a matter in issue other than the defendant's propensity to commit the crime charged," we also conclude that the testimony satisfies the second *Shackleford* requirement. The other-crime evidence was sufficiently

similar to the crime charged in that Shipley testified that Liefer had stored the marijuana on his farm while waiting to distribute it, a *modus operandi* similar to that charged in the indictment. The other act was undoubtedly close enough in time, for it occurred within the time period of the conspiracy.

Liefer contends that the evidence fails the "clear and convincing" requirement because Shipley's testimony pertained to a return of the marijuana to Birtwell, not a distribution. We do not find this argument convincing. Shipley clearly testified that Liefer returned the marijuana because Liefer could not distribute it (because of low quality). The purpose of the "clear and convincing" standard is to ensure that the government's evidence directly establishes that the defendant participated in a prior crime (or misconduct), and to protect the defendant from evidence based upon "highly circumstantial inferences." *Chaimson,* 760 F.2d at 807, *quoting United States v. Dolliole,* 597 F.2d 102, 107 (7th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979); *see also Hyman,* 741 F.2d at 193 (direct, unimpeached testimony is clear and convincing). *But cf. Boroni,* 758 F.2d at 225 (uncorroborated and vague allegations of immunized witness fall short of clear and convincing). Shipley's testimony was admissible, therefore, because it was directly probative of Liefer's intent to distribute.

▪ Finally, Liefer contends that "any probative value of Shipley's testimony was far outweighed by its prejudicial impact particularly in view of the fact that the Trial Court gave no limiting instruction with regard to Shipley's testimony." First of all, none of the defendants tendered a limiting instruction or requested one at the time of Shipley's testimony, despite the

---

3. In his opinion in *Chaimson* Judge Cudahy emphasized that the other-acts evidence must be "really introduced to show *intent*" and the government should not be allowed to "simply flood the courtroom with other-crimes evidence on the grounds that the crime was one of specific intent." 760 F.2d at 813 (Cudahy, J., concurring). On the other hand, the other-acts evi-

dence does not have to be the government's only evidence on the specific-intent issue. *See Kane,* 726 F.2d at 348. The evidence must, however, be reasonably necessary, when weighed with the government's other available evidence, to meet the government's burden of proof beyond a reasonable doubt. *Id.*

fact that a lengthy sidebar shortly before Shipley testified made it clear that all the parties were aware of what Shipley would say. We will only reverse the trial court for failing to give an unrequested instruction if the failure is plain error, *United States v. Oxford,* 735 F.2d 276, 280 (7th Cir.1984), and Liefer does not argue that the trial court's failure amounted to plain error.[4]

Moreover, we reject the argument that the prejudicial impact of Shipley's testimony "far outweighed" its probative value. We have repeatedly said that, with respect to Fed.R.Evid. 403, "[t]he trial judge's assessment of relative probative value and unfair prejudice is generally accorded great deference because of his firsthand exposure to the evidence and his familiarity with the course of the trial proceeding." *United States v. Levy,* 741 F.2d 915, 924 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). *See also Arnold,* at 832; *Hyman,* 741 F.2d at 913 (7th Cir.1984); *United States v. Covelli,* 738 F.2d 847, 854 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984). Based upon the probative value of Shipley's testimony noted above,[5] we cannot say that the trial judge abused his discretion in admitting the evidence. *See Chaimson,* 760 F.2d at 808 (reviewing court may reverse only upon a showing of abuse of discretion).

We therefore conclude that the trial judge acted within his discretion in allowing Shipley to testify about picking up the marijuana at Liefer's farm. The testimony was probative of Liefer's specific intent to distribute, which was an essential element of the crime for which Liefer was charged.

The trial judge did not abuse his discretion in deciding that the probative value of the testimony was not outweighed by its potential for prejudice.

## B. MISTRIAL

Defendant Liefer argues that the district court should have declared a mistrial because the Assistant United States Attorney twice attempted to elicit testimony that the government attorney knew was inadmissible. Liefer argues that such prosecutorial misconduct demands reversal. *See United States v. Westbo,* 576 F.2d 285, 290 (10th Cir.1978), *overruled on other grounds, United States v. Hopkins,* 744 F.2d 716 (10th Cir.1984) (en banc).

The first instance of alleged prosecutorial misconduct occurred during the testimony of Richard Schair. The government called Schair to testify on two occasions. On the first occasion, the trial judge ruled that Schair could not testify about statements by co-conspirators because the government's evidence had not yet established the conspiracy, as required by *United States v. Santiago,* 582 F.2d 1128, 1133 (7th Cir.1978). The government recalled Schair as its final witness in its case-in-chief, and the trial judge then required the government to make an offer of proof as to what Schair would testify. The offer of proof contained no reference to any statement by Darrell Hall. Nonetheless, the government sought to elicit from Schair that Hall had once approached Schair to buy marijuana for Liefer. Liefer's attorney objected to this line of testimony, first on foundation grounds and later on what appear to be relevance or hearsay grounds, and the government withdrew the question

---

**4.** We also note that, with respect to the testimony of Lisa Tite (which occurred after Shipley's testimony), the court offered to give a limiting instruction and defense counsel rejected the offer, arguing that a limiting instruction would only "highlight" the testimony. Although this incident was unrelated to Shipley's testimony, it does weigh against a finding of plain error in that it reveals that the trial judge was aware that defense counsel was considering the strategic ramifications of such an instruction. In such a case, the trial judge might reasonably be less

likely to instruct the jury *sua sponte,* and more likely to wait for defense counsel to indicate when, if ever, counsel felt the instruction would be appropriate.

**5.** The government also maintains that Shipley's testimony was probative on the issues of Liefer's knowledge of the marijuana distribution business, and his plan to involve himself in the distribution business by providing storage space for easy pickup of the marijuana.

to which the defendant raised the second objection.

Liefer argues that, since Hall was not alleged to be a co-conspirator, any testimony that Hall said Liefer sent him to buy drugs was clearly inadmissible hearsay. *See United States v. Koopmans,* 757 F.2d 901, 905 (7th Cir.1985). Furthermore, Liefer asserts, the evidence prejudiced him because no other witness testified that Liefer had contacted him about marijuana. Liefer contends that the government's introduction of these statements constituted prosecutorial misconduct, and that the district court therefore erred when it denied Liefer's motion for a mistrial. *See Westbo,* 576 F.2d at 289–92.

Since the government never offered proof nor alleged that Hall participated in the conspiracy, testimony about what Hall said to Schair about Liefer was hearsay, and not admissible under Fed.R.Evid. 801(d)(2)(E). *See United States v. Shelton,* 669 F.2d 446, 465 (7th Cir.) (*Santiago* requires district court to determine that declarant was member of conspiracy), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982). The Assistant United States Attorney either knew or should have known that this evidence was clearly inadmissible. Unlike *Westbo,* however, here the trial court had not ruled on the admissibility of the testimony, and the government attorney therefore did not violate the clear intent of an evidentiary ruling. *See Westbo,* 576 F.2d at 292. The trial judge was in the best position to determine whether the incident was so serious as to merit a mistrial, *see United States v. Gardner,* 611 F.2d 770, 777 (9th Cir.1980), and we will reverse his decision only for an abuse of discretion. *See United States v. Jordan,* 722 F.2d 353, 357 (7th Cir.1983); *Westbo,*

576 F.2d at 292. Liefer was not so clearly prejudiced by this incident that the district court abused its discretion by denying Liefer's motion for a mistrial. *See Jordan,* 722 F.2d at 357 (trial court has broad discretion in determining appropriate remedy for the presentation of prior bad acts evidence).

Defendant Liefer also alleges prosecutorial misconduct during the redirect examination of Jack Birtwell's girl friend Lisa Tite. The government called Tite as a rebuttal witness over Liefer's objection that her testimony would not be proper rebuttal and would merely emphasize testimony about alleged marijuana transactions that were not part of the conspiracy charged. The court allowed the testimony on the issue of Liefer's credibility, to rebut Liefer's testimony that he had not had any large cash transactions with Jack Birtwell.[6]

Once on the stand, however, Tite's testimony did not meet the government's expectations. When Tite failed to testify as anticipated, the Assistant United States Attorney changed his approach and attempted to elicit testimony from Tite that Birtwell had been involved in the distribution of controlled substances. The court sustained Liefer's objection that this line of questioning was outside the scope of the issues.

Following cross-examination, the Assistant United States Attorney again attempted on redirect to elicit testimony from Tite concerning Birtwell's drug involvement. When Tite once again failed to cooperate, the Assistant United States Attorney provided the elusive testimony himself by posing a leading question that informed the jury that Birtwell had received a ten-year sentence for the distribution of controlled substances.[7] Liefer immediately objected

---

**6.** The government expected Tite to testify that she witnessed an exchange of a large quantity of currency from Liefer to Birtwell. Tite's testimony, however, was merely that she saw Liefer holding "what looked like money." Government attempts to extract a more specific description elicited, for the most part, only vague and confused answers.

**7.** The exchange between the Assistant United States Attorney and Tite was as follows:

Q. You said you worked and Mr. Birtwell worked?
A. Uh-huh.
Q. Mr. Birtwell worked in the distribution of controlled substances, didn't he?
A. He had a construction company with his partner.
Q. He received ...
A. Which is what I was referring to.

and moved for a mistrial. The court sustained the objection and instructed the jury to disregard the statement, but denied the motion for mistrial.

■ The line of questioning on redirect, in particular the leading question, was clearly improper in light of the court's prior ruling. Unlike the questions asked of Schair, the government on this occasion violated the "clear intent of the court's [prior] ruling." *Westbo*, 576 F.2d at 292. However, the trial court ordinarily is in the best position to determine whether the incident of impropriety merited a mistrial, *see Gardner*, 611 F.2d at 777, and we will reverse only for an abuse of discretion. *Jordan*, 722 F.2d at 357; *Westbo*, 576 F.2d at 292.

■ It is clear that the government disregarded the trial court's ruling in order to present inadmissible evidence to the jury. Nevertheless, we cannot say that the trial judge abused his discretion in determining that an instruction to the jury to disregard the statement obviated the need for a mistrial. Unlike the court in *Westbo*, 576 F.2d at 291–92, we are not faced with a case where the inadmissible evidence of the prior misconduct concerned the defendant himself. Furthermore, the evidence that Birtwell had a drug conviction might have supported Liefer's testimony that Shipley and/or Birtwell stashed marijuana on Liefer's farm without Liefer's knowledge or consent. We recognize that Liefer had testified that he and Birtwell were friends, and thus evidence of Birtwell's conviction might have had some impact upon Liefer's case. The trial court determined that any potential prejudice could be cured by the instruction without the necessity of a new trial. We find no abuse of discretion.

## C. LESSER INCLUDED OFFENSE

Defendant Liefer contends that the court erred in refusing to instruct the jury as to the possibility of finding Liefer guilty of the lesser included offense of conspiracy to distribute less than 1,000 pounds of mari-

juana. Liefer maintains that, based on Jeffrey Cox's testimony, the jury could have found a conspiracy among Liefer, Patterson, and Cox involving only the two shipments of marijuana, each approximately 200 to 300 pounds, that were allegedly purchased by Patterson and stored at Liefer's farm. The government argues that the case involved only one factual dispute: whether the defendants were members of the Schair/Bayles conspiracy for which the grand jury indicted them.

■ We affirm the trial court's decision to refuse the lesser offense instruction. Recently we reviewed the standard for determining when a defendant is entitled to an instruction on a lesser included offense in *United States v. Medina*, 755 F.2d 1269, 1272–73 & n. 2 (7th Cir.1985). In *Medina*, we noted that "[a]s a general rule, a defendant is entitled to an instruction on a lesser included offense 'if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'" 755 F.2d at 1273, *citing Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973); *Sansone v. United States*, 380 U.S. 343, 349, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965); *Berra v. United States*, 351 U.S. 131, 134, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956); *Stevenson v. United States*, 162 U.S. 313, 323, 16 S.Ct. 839, 892, 40 L.Ed. 980 (1896); *Beck v. Alabama*, 447 U.S. 625, 635, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980).

A defendant generally satisfies this requirement by presenting "sharply conflicting testimony" on the element distinguishing the greater offense from the lesser. *Medina*, 755 F.2d at 1273. Absent conflicting testimony, a defendant may prevail if the jury might fairly infer the lesser offense from the evidence presented, "including a reconstruction of events gained by accepting the testimony of one or more witnesses only in part." *Id., citing United States v. Sinclair*, 444 F.2d 888, 890 (D.C. Cir.1971).

■ In this case, there was no dispute that the Schair/Bayles conspiracy intended

Q. And which he received ten years for distribution of controlled substance?

to distribute significantly more than 1,000 pounds of marijuana. The only factual issue in dispute was whether defendant Liefer was a member of that conspiracy. Where the defendant, like Liefer, presents solely an exculpatory defense, and does not defend upon the ground that he has committed only a lesser crime, it is not error for the trial court to refuse to instruct the jury on a lesser included offense.[8] *See Sinclair,* 444 F.2d at 890.

In this case, the trial court properly instructed the jury as to multiple versus single conspiracies. If the jury had found that the government had not proven that Liefer was part of the Schair/Bayles conspiracy, the jury would have been obligated to find Liefer not guilty.

## D. MOTION FOR ACQUITTAL OR SEVERANCE

### 1. Acquittal

Defendant Liefer contends that the trial court erred in failing to grant his motion for acquittal. Liefer correctly points out that the only prosecution witness to connect him to the conspiracy was Jeffrey Cox, whose credibility Liefer challenged at trial. Even if we were to accept Liefer's argument that the case against him was weak, his challenge is essentially a credibility challenge, and thus within the province of the jury.[9] If the jury believed Cox's testimony linking Liefer to the Schair/Bayles conspiracy, then that evidence suffices to support a conviction. We thus uphold the trial court's denial of Liefer's motion for acquittal.

An appellate court reviewing a motion for acquittal applies the same standard as the trial court, *United States v. Weed,* 689 F.2d 752, 756 (7th Cir.1982), *i.e.,* whether the evidence viewed in the light most favorable to the government could support a conviction, *United States v. Redwine,* 715 F.2d 315, 319 (7th Cir.1983). We do not substitute our own determination of the credibility of witnesses, of the weight

**8.** The defendant Liefer cites several cases in support of his argument, but none of the cases are applicable to the facts of this case, because in each of those cases the element separating the lesser offense from the greater was in dispute. For example, in *United States v. Brischetto,* 538 F.2d 208 (8th Cir.1976), although the defendant presented an exculpatory defense, the element of intent was still at issue because the government's only evidence of intent to distribute was the permissive inference the jury could, but was not required to, draw from the amount of marijuana the defendant possessed. *Id.* at 210. Thus, intent was in dispute and the reviewing court held that the trial court should have instructed the jury on the lesser included offense of possession. *Id. See also United States v. Garcia-Duarte,* 718 F.2d 42, 47–48 (2d Cir.1983) (trial court must instruct on the lesser included offense of possession where the issue of intent to distribute is in dispute because at the time of arrest the defendant possessed only a small amount of cocaine, which the defendant claimed he did not intend to distribute); *United States v. Giampino,* 680 F.2d 898, 901–03 (2d Cir.1982) (trial court must instruct as to the lesser included offense that omits the element of force where the defendant claims that he used no force). In the case of defendant Liefer, there is no dispute about the amount of marijuana that the Schair/Bayles conspiracy attempted to distribute.

**9.** Liefer also contends that even if the government demonstrated a conspiracy between Liefer and Patterson, the government failed to show Liefer's connection to the Schair/Bayles organization. This argument is based upon a misunderstanding of conspiracy law. The government need not show that the defendant was acquainted with or knew all the co-conspirators, *United States v. Wilson,* 657 F.2d 755, 759 (5th Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982), or knew each detail of the conspiracy, *United States v. Rosado-Fernandez,* 614 F.2d 50, 53 (5th Cir.1980), or played more than a minor role in the conspiracy, *United States v. Davis,* 666 F.2d 195, 201 (5th Cir. 1982). It is enough that the government presented evidence that, if believed, proved that Liefer knew of the conspiracy's general scope and sought the common end of distributing the marijuana. *See Blumenthal v. United States,* 332 U.S. 539, 559, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947); *Percival,* 756 F.2d at 606–09; *United States v. Noble,* 754 F.2d 1324, 1328–29 (7th Cir.1985) (U.S.Appeal Pending). The evidence presented by the government, if believed, was sufficient to connect Liefer to the Schair/Bayles conspiracy through his relationship with Patterson. Furthermore, the trial court properly instructed the jury on the difference between single and multiple conspiracies.

of the evidence, or of the reasonable inferences to be drawn from the evidence, for those of the jury. *United States v. Mariani,* 725 F.2d 862, 865 (2d Cir.1984). The jury evidently chose to accept the testimony of Cox concerning Liefer's involvement in the conspiracy, and Cox's testimony, viewed in the light most favorable to the government, supports the trial court's decision to deny the motion for acquittal.

### 2. Severance

Defendant Liefer also challenges the trial court's refusal to grant his motion for severance. Liefer contends that he was prejudiced in that the jury heard "massive amounts" of evidence about the illegal activities of other participants in the conspiracy, most of which did not directly concern Liefer.[10] We find that the trial judge did not abuse his discretion in denying Liefer's motion for severance.

■ The decision whether to grant a severance involves a balance between important interests. On one hand, we have recognized a strong public interest in having persons jointly indicted for conspiracy tried together. *United States v. Gironda,* 758 F.2d 1201, 1220 (7th Cir.1985); *United States v. Percival,* 756 F.2d 600, 610 (7th Cir.1985). On the other hand, a joint trial may prejudice one or more of the defendants by confusing the jury as to what evidence is offered against each defendant. *United States v. Shively,* 715 F.2d 260, 267 (7th Cir.1983). The district court ordinarily is in the best position to balance this public policy preference for joint trials against the possibility that a joint trial may prejudice one of the defendants. *Gironda,* 758 F.2d at 1220. *See also Percival,* 756 F.2d at 610; *Shively,* 715 F.2d at 267.

■ Therefore, the decision whether to grant a motion for severance lies within the sound discretion of the trial court, and we will reverse only upon a clear showing of abuse of discretion. *Gironda,* 758 F.2d at

1220; *Percival,* 756 F.2d at 610. The judge correctly instructed the jury to give separate consideration as to what the evidence showed with respect to each defendant, not to consider against any defendant evidence admitted solely against some other defendant or defendants, and to decide each defendant's case on the evidence and law applicable to that particular defendant. We affirm the conviction of defendant Liefer.

### II. GEORGE SHAROS

Defendant George Sharos presented a defense based upon mistaken identity. The notebook at the "stash house" which recorded the movement of the marijuana identified someone who picked up marijuana only as "George," and Sharos challenged the credibility of the witnesses identifying him as "George." Sharos contends that the trial court erred by not directing a verdict for acquittal, by allowing Richard Schair to testify about marijuana transactions with Sharos occurring prior to the alleged conspiracy, by allowing Schair to testify to hearsay statements by Jeffrey Bayles, and by allowing FBI Agent Robert Dueker to testify that an identification lineup for Sharos was unnecessary because Dueker had other evidence (not presented at trial) that identified Sharos as "George." Sharos also maintains that the government attempted to impeach Bayles through improper methods, and then improperly alluded to the impeachment in closing argument.

### A. SUFFICIENCY OF THE EVIDENCE

■ Defendant Sharos points out that various witnesses gave conflicting testimony concerning whether Sharos was the "George" identified in the marijuana "stash house" records. Sharos was also able to point out inconsistencies and credibility problems in the testimony of the two witnesses who identified him as "George."

---

10. Liefer's argument is partially based upon his theory that the evidence proved at most that Liefer was involved in a much smaller conspiracy. Because we have already rejected that

argument, *see supra* note 9, we consider the motion for severance only in the context of the larger Schair/Bayles conspiracy.

Nevertheless, the jury evidently chose to resolve the credibility issue in favor of the government, and we will not substitute our own determination of the credibility of witnesses for the jury which had an opportunity to observe firsthand the conflicting testimony and the demeanor of the witnesses in question. *See Redwine,* 715 F.2d at 319; *see also United States v. Lendmann,* 757 F.2d 916, 919 (7th Cir.1985) (not the court's function to reassess a jury's credibility determination).

We will sustain a jury verdict if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Murray,* 753 F.2d 612, 615 (7th Cir.1985) (emphasis in original). In this case, resolving the conflicting testimony in the light most favorable to the government, the jury could have found that Sharos was the "George" recorded in the "stash house" records.

## B. TESTIMONY OF RICHARD SCHAIR

Defendant Sharos objects first to testimony by Schair that between 1975 and 1979 the defendant Sharos was present at approximately 100 marijuana deals between Schair and Brian Biagini. Sharos argues that this evidence was not admissible under Fed.R.Evid. 404(b). The government contends that Schair's testimony was necessary to establish the relationship between Brian Biagini and George Sharos, and to explain the discrepancy between the "stash house" records listing a certain number of bales of marijuana delivered to "George," and records kept by Jeffrey Bayles showing the same number of bales

sold to "Brian." The government also contends that Schair's testimony was probative on the issue of the identity of "George."

 As we have already mentioned, Rule 404(b) prohibits the introduction of evidence of a defendant's prior "bad acts" for the purpose of proving the defendant's propensity to commit the crime charged. *See Shackleford,* 738 F.2d at 779. Rule 404(b) provides, however, that evidence of prior "bad acts" are admissible for a number of other purposes. One of these admissible purposes is "identity." In this instance, the testimony of Schair was admissible to show the identity of the "George" listed in the "stash house" records, and to show that the "George" appearing in the "stash house" records was consistent with the "Brian" in Bayles' records, because Biagini paid Bayles, and Sharos appeared at the "stash house" to pick up Biagini's marijuana.[11] Although the "identity" exception in Rule 404(b) usually applies to an unusual *modus operandi,* this exception is broad enough to include Schair's testimony about the relationship between Sharos and Biagini. Schair's testimony was also probative of Sharos' intent to distribute, *see supra* § IA, and knowledge of the marijuana distribution business.

 Sharos also challenges the admissibility of the testimony of Schair containing prior out-of-court statements by Bayles. Sharos argues that these statements by Bayles were hearsay, and that the co-conspirator exception to the hearsay rule, Fed. R.Evid. 801(d)(2)(E), does not apply because Sharos was not a member of the conspiracy when Bayles made the out-of-court statements.

---

11. Similarly, Sharos alleges that it was error to allow the government to recall two of Sharos' witnesses as government rebuttal witnesses. The witnesses had testified for Sharos that at the time in question Sharos did not match the description given of "George." The government, on rebuttal, questioned the witnesses about the relationship between Sharos and Biagini, which Sharos alleges was improper because the testimony did not rebut anything in Sharos' case. We note that the trial court had broad discretion to determine whether the government's evidence fell within the proper scope of rebuttal. In this case the trial judge certainly acted within the proper bounds of his discretion in allowing the government to present this evidence to rebut Sharos' mistaken-identity defense, since the evidence provided a possible explanation of the discrepancy in the organization's records (*i.e.,* why one set listed "Brian" and the other "George"), which in turn was probative of the identify of "George."

Although Sharos is correct that the statements by Bayles were hearsay, the statements were nonetheless admissible under Rule 801(d)(2)(E). The defendant and the declarant need not both be members of the conspiracy at the time of the statement, for a defendant who joins a conspiracy after its inception adopts all prior acts and declarations in furtherance of the conspiracy by his fellow co-conspirators. *United States v. Coe*, 718 F.2d 830, 839 (7th Cir.1983). Thus, whether or not Sharos had already become a member of the conspiracy at the time that Bayles made the statements, Schair's testimony was admissible against Sharos under Rule 801(d)(2)(E).

## C. TESTIMONY OF FBI AGENT ROBERT DUEKER

Defendant Sharos raises two objections to the government's examination of Agent Dueker. First, he contends that the testimony of Dueker improperly attempted to impeach the prior witness Jeffrey Bayles on Bayles' inability (or unwillingness) to identify Sharos as "George." Second, Sharos contends that the redirect examination of Dueker improperly led the jury to believe that the government had sufficient evidence (not presented to the jury) to remove any doubt that Sharos was "George."

██ On the first objection, Sharos contends that the government improperly attempted to impeach Bayles by introducing evidence of prior inconsistent statements to FBI Agent Dueker, without first giving Bayles an opportunity to explain the statements. "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require." Fed.R.Evid. 613(b).

The government did confront Bayles with a number of alleged prior inconsistent statements made to Agent Dueker during Bayles' direct testimony. Sharos' principle complaint is that the government inferred through questioning Agent Dueker that Bayles had made a prior inconsistent statement identifying "George" in the notebook as Sharos. The government did not confront Bayles with this alleged statement during Bayles' testimony. The trial court, however, sustained defense counsel objections to each government attempt to elicit testimony from Dueker that Sharos was "George." Whatever prejudice, if any, that Sharos suffered was therefore slight, and the trial court's frequent instructions to the jury to disregard questions to which the trial court sustained an objection served as an adequate remedy.

Sharos maintains that the government increased the prejudice by misstating the impeachment of Bayles in closing argument. Sharos refers to a specific statement in which the Assistant United States Attorney told the jury, "We impeached when I asked [Bayles] 'Did you ever tell the agents about Biagini being your customer, about him wanting to be buffered and using George? Did you ever tell the agent that?'"[12]

In fact, Bayles was never asked that specific question. However, Bayles was asked, "Did you ever make a statement to special agent Dueker that a George was working for Biagini?" to which Bayles replied that he did not recall. It should not be necessary to admonish counsel, when discussing the evidence during closing argument, not to misstate the evidence, but we believe in this instance the Assistant

---

12. Sharos maintains that the government attorney also gestured toward where Sharos was sitting in the courtroom when he referred to "George." The transcript, of course, does not include the physical gestures of counsel. In rejecting Sharos' argument, however, we note that the trial judge, who had the chance to observe the government attorney, did not find any fault with the behavior of the prosecutor when Sharos' attorney first alleged that the prosecutor had made an improper gesture. Furthermore, the government attorney denied any wrongdoing. We believe that a matter such as this is best left to the discretion of the trial judge, who is in the best position to rule on whatever might have happened outside of the record contained in the transcript.

United States Attorney's account of the testimony, although perhaps more suggestive than the actual record, did not affect the outcome of this case. *See United States ex rel. Shaw v. DeRobertis*, 755 F.2d 1279, 1282 (7th Cir.1985) (whether improper comment denied defendant due process requires determination whether it is likely that the comment changed result of trial).

▮ Sharos also contends that the trial court erred in denying his motion for a mistrial following the redirect examination of Agent Dueker. During cross-examination, counsel for Sharos asked Agent Dueker why Richardson (who had identified Sharos as "George" based upon one meeting three years prior to the trial) was never asked to identify Sharos in a pretrial lineup or photo array. Agent Dueker responded that "[w]e did not want to influence any identification by Mr. Richardson in court." Sharos' attorney then pursued the point, raising the inference that fear of tainting in-court testimony was not the government's real motive.

On redirect, the government attempted to elicit testimony from Dueker that the government did not believe a pretrial identification was necessary because it already had sufficient evidence identifying Sharos as "George." The Assistant United States Attorney asked Dueker three questions concerning evidence of which Dueker was aware identifying Sharos as "George," and each time Sharos objected and the trial court sustained the objection.[13] Following the third sustained objection, the trial judge instructed the jury to disregard the question. Following the conclusion of Agent Dueker's testimony, Sharos moved for a mistrial on that basis, but the trial court denied the motion.

Sharos contends that the government intentionally tried to bolster a weak case (concerning the identification of Sharos as "George") by improperly introducing testimony through Agent Dueker for the purpose of persuading the jury that despite the government's weak case the jury should find that Sharos was "George" because the government had other identification evidence that the jury did not see. Sharos likens this to the case where a prosecutor in closing argument tells the jury that in addition to the evidence brought out at trial, the government has significant additional, unproduced evidence. *See, e.g., DeRobertis*, 755 F.2d at 1281–82 (reversible error for the prosecutor to tell the jury "[i]f you had [the inadmissible police report], you would see the truth").

We do not believe, however, that the record supports Sharos' claim of intentional misconduct. Sharos had raised an inference during cross-examination that Agent Dueker had a sinister motive for not seeking a pretrial identification of Sharos, and the government's attempts to rebut that inference, although ultimately not allowed by the trial court, were not misconduct, just misguided. Furthermore, the trial court sustained objections to all the questions and answers, and then specifically instructed the jury to disregard the questions. The trial court's denial of Sharos' motion for a mistrial thus falls within the proper discretion of the trial court, *Jordan*, 722 F.2d at 357. We affirm the conviction of defendant Sharos.

## III. CHARLES PATTERSON

Defendant Charles Patterson argues that the district court erred by admitting evidence of the defendant's involvement in a prior drug conspiracy, by failing to give a limiting instruction as to the evidence of the prior conspiracy, and by failing to give the defendant's tendered instruction on a lesser included offense.[14]

**13.** The only question the trial judge allowed was, "At the time that the photographic line-up for Mr. Cox was made, was there an issue as to the identity of Mr. Sharos?" The trial judge rejected an objection that the question called for "conclusion, speculations, legal conclusions," and Agent Dueker answered, "No, there wasn't."

**14.** Defendant Patterson also contends that he was prejudiced by all the substantive errors raised and argued by co-defendants Liefer and Sharos. Because we affirm the convictions of both Liefer and Sharos, we need not address defendant Patterson's argument that he was

## A. PRIOR DRUG CONSPIRACY

Jeffrey Bayles, one of the admitted heads of the conspiracy, testified extensively about his involvement in the marijuana distribution business. Bayles testified that the present conspiracy grew out of Bayles' contacts from a prior drug conspiracy. Charles Patterson was one of Bayles' contacts from the prior conspiracy (which originated approximately seven years before the offenses charged in the indictment), and Bayles' testimony frequently touched upon Patterson's involvement in the prior conspiracy. Patterson alleges that this evidence of a prior "bad act" was inadmissible under Fed.R.Evid. 404(b), and that it so prejudiced Patterson that he deserves a new trial.

This brings us back once again to the continuing problems under Fed.R.Evid. 404(b). Clearly the government's evidence was not admissible under Rule 404(b) merely to prove that Patterson had been involved in drug conspiracies before and thus Patterson was probably involved again. The government argues, however, that the evidence was necessary to show the development of the conspiracy, as well as to explain why Bayles would entrust Patterson with large consignments of marijuana.

■ Rule 404(b) does not bar evidence of prior bad acts to prove defendant's plan or design. Evidence of the same or common or connected or inseparable plan or scheme or transaction may be introduced to "complete the story of the crime on trial by proving its immediate context of happenings near in time and place." 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 404[16], at 404–118 & n. 2 (Supp. 1985), *quoting* McCormick, Evidence § 157 (1954). *See also Llach v. United States,* 739 F.2d 1322, 1327 (8th Cir.1984) (in prosecution involving conspiracy to distribute cocaine, evidence of defendant's prior involvement in distributing methaqualone and marijuana admissibile to prove intent and common scheme or plan). In this case, the trial court properly admitted the testimony of Bayles as background on how the con-

spiracy developed, and to show Patterson's intent and plan to resume operating as a middleman for Bayles. The testimony of Patterson's prior dealings with Bayles explained why Bayles trusted Patterson with large amounts of marijuana on a consignment basis. The trial court's decision to admit Bayles' testimony thus fell well within the trial court's discretion.

■ Patterson also argues that the evidence of his involvement in the prior conspiracy was too remote to be admissible, because it dealt with events beginning seven years before the charged conspiracy. *See Shackleford,* 738 F.2d at 779. We note that Bayles' testimony was not limited to acts that occurred in 1974, but rather revealed a continuous course of dealings between Bayles and Patterson, interrupted only by Bayles' 1978–1980 stay in the penitentiary. We thus find that the evidence was not too remote to be admissible under Rule 404(b). *See United States v. Lea,* 618 F.2d 426, 431–32 (7th Cir.), *cert. denied,* 449 U.S. 823, 101 S.Ct. 82, 66 L.Ed.2d 25 (1980).

Patterson also alleges that Bayles' testimony failed the *Shackleford* test that evidence of the defendant's prior "bad act" be "clear and convincing." 738 F.2d at 779. Patterson relies upon *United States v. Shepherd,* 739 F.2d 510, 513 (10th Cir. 1984), in which the Tenth Circuit held that where the only evidence against the defendant is testimony by an accomplice, that accomplice cannot "boot strap" his testimony by providing uncorroborated testimony about prior criminal acts of the defendant. We need not decide whether to adopt *Shepherd* for this circuit, however, because this case is distinguishable from *Shepherd.* The government presented ample other evidence, in addition to Bayles' testimony, that implicated Patterson in the second conspiracy.

■ Patterson argues that the trial court abused its discretion under Rule 403 in admitting Bayles' testimony because the

prejudiced by evidence admitted solely against the other defendants.

prejudice to Patterson far outweighed the testimony's probative value. We have already found that the testimony did have probative value and thus was admissible under Rule 404(b). We also conclude that the trial court did not abuse its discretion in determining that the probative value of the evidence was not outweighed by any prejudice to Patterson. *See Chaimson,* 760 F.2d at 808 (reviewing court gives great deference to trial court and reverses only upon a showing of abuse of discretion).

Patterson argues that the case against him "rests virtually completely on the testimony of narcotics users and peddlers who knew that they could achieve substantially reduced sentences by testifying against the defendant in this case." We agree that this is a factor that the trial court ought to consider in weighing probative value against prejudice, and indeed we have no reason to believe that the trial judge did not consider that factor in this case. We are not prepared, however, to hold that the credibility (or lack thereof) of the government's witnesses is by itself enough to make the evidence inadmissible.

As this case demonstrates, the participants in drug conspiracies are often not civic leaders. The defendants at trial had ample opportunity to expose the lack of credibility of their accusers, including Jeffrey Bayles. The defendants cannot, however, use the unscrupulous nature of the persons with whom they chose to conspire as a shield to keep out otherwise admissible evidence. The jury believed the other co-conspirators.

## B. LIMITING INSTRUCTION

Patterson contends that the trial court erred in failing to instruct the jury on the limited purpose for which it could consider Bayles' testimony (*i.e.,* as proving intent or plan, but not propensity to commit the crime charged). Patterson concedes that he failed to request an instruction, and thus we will reverse only if the trial court's failure was plain error. *Oxford,* 735 F.2d at 280. We will not find plain error if

other competent evidence overwhelmingly demonstrates the defendant's guilt. *See United States v. Metcalfe,* 698 F.2d 877, 883 (7th Cir.), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 814 (1983).

Witnesses Bayles, Schair, Cox, and Vernon Michaels each implicated Patterson as a participant in the charged conspiracy. Further, the records at the "stash house" showed that large amounts of marijuana went to someone named "Charlie." On the basis of this evidence, we do not believe that the trial court's failure to issue a limiting instruction affected the outcome of Patterson's trial.

Patterson, citing *Evitts v. Lucey,* —— U.S. ——, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), contends that the failure to request a limiting instruction constitutes ineffective assistance of counsel in violation of the Sixth Amendment. In *Evitts,* the defendant's counsel failed to file the required statement of appeal, and therefore the state court denied the defendant the right to appeal his conviction. *Id.* 105 S.Ct. at 832–33. Certainly, the failure of Patterson's counsel to submit a limiting instruction does not rise to the magnitude of the conduct of the defense counsel in *Evitts.* We therefore apply the established standard in this circuit, that the defendant must show both that his counsel was deficient, and that the deficiency prejudiced the defendant. *See United States v. Noble,* 754 F.2d at 1324, 1335 (7th Cir.1985) (U.S. Appeal Pending) (discussing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We need not decide whether Patterson's counsel "fell below an objective standard of reasonableness," 754 F.2d at 1335, because, in light of the substantial evidence against Patterson, there is no probability that the outcome of his trial was prejudiced by the alleged deficiency.

## C. LESSER INCLUDED OFFENSE

Patterson also joins defendant Liefer in challenging the trial court's failure to instruct the jury on the lesser included of-

fense of conspiracy to distribute less than 1,000 pounds. As discussed above with respect to defendant Liefer, we do not find this argument persuasive. *See supra* § IC. Having reviewed the challenges raised by defendant Patterson, we affirm his conviction.

## IV. CONCLUSION

The defendants assert a number of arguments in this appeal, several of which raise questions about the government's conduct at trial. There are likewise some questions about the conduct of defense counsel. The zealousness of government counsel, however, in these particular circumstances does not create reversible error. Chief Judge Foreman maintained control of this complex, often volatile, multi-defendant conspiracy case. After carefully reviewing the record below, we conclude that all of the trial judge's rulings fall within his permissible range of discretion. The convictions of defendants Liefer, Patterson, and Sharos are AFFIRMED.[15]

---

15. To the extent that the defendants raise other issues or advance other arguments in support of the issues specifically addressed above, we find such arguments to be without merit.