**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Willie GREGORY, Defendant–Appellant.**

**No. 95–1572.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1995.

Decided Jan. 24, 1996.

Ralph M. Friederich, Deidre Duroborow (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Daniel R. Schattnik (argued), Unsell, Unsell & Schattnik, East Alton, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, COFFEY, Circuit Judge, and SKINNER, District Judge.*

SKINNER, District Judge.

Defendant-appellant Willie Gregory and co-defendant Larry Watson were charged in a seven count indictment alleging distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Gregory was convicted of both offenses and sentenced to 135 months incarceration, followed by a four-year period of supervised release. On appeal, Gregory argues (1) that the evidence was insufficient to support the convictions, (2) that the trial court abused its discretion in admitting evidence of Gregory's prior bad acts, (3) that trial counsel was ineffective in failing to obtain an *in limine* instruction as to prejudicial evidence, and (4) that the district court erred in determining relevant conduct in calculating the amount of cocaine at issue under the Sentencing Guidelines. We affirm.

## I.

## BACKGROUND

### A. Facts

At Gregory's trial, Special Agent Andre Williams of a local drug enforcement unit testified that he and an informant made five purchases of crack cocaine from Larry Wat-

* Hon. Walter Jay Skinner of the District of Massa-    chusetts, sitting by designation.

son at Gregory's residence in East St. Louis, Illinois between March 23 and April 6, 1994. During these sales, Gregory often stood watch while Agent Williams purchased a half-ounce or an ounce of crack cocaine from Watson. Gregory also functioned as a "doorman," answering the door and conveying to Watson that Williams wished to make a purchase, or to Williams the price Watson demanded for the drugs. After answering the door on March 30, Gregory informed Agent Williams that Watson was not present, called Watson on the telephone, and gave Williams the phone to arrange the purchase of an ounce of cocaine. Upon Williams' return the following day, Gregory stated "I have what you need," and gave Williams a cardboard toilet paper roll containing an ounce of crack cocaine. Gregory stood guard while Williams and Watson negotiated a price. In the April 6 transaction, Agent Williams called Watson and ordered four ounces of crack. Agent Williams proceeded to Gregory's residence, where Watson let him in. Watson stated that he had three ounces of crack available for purchase, and Williams bought one, promising to come back later in the day for the remaining two. Later that day, the Illinois State Police executed a search warrant on Gregory's residence while Watson, Gregory, and Vivian Clayton were present. The search produced various drugs, drug paraphernalia, and cash.

Prior to trial, Larry Watson entered into a plea agreement with the government. At Gregory's trial, Watson testified that he used Gregory's residence to sell and store crack cocaine, that Gregory occasionally pooled money with him to purchase cocaine, and that Gregory occasionally sold crack. Watson also corroborated Agent Williams' account of the five drug transactions, and added that Gregory had functioned as a "doorman."

The government's third corroborating witness was Vivian Clayton, a recovering crack addict who had a long association with Gregory. Over defense objections, Vivian Clayton testified that she smoked crack with Gregory frequently in his residence, and that she and the defendant were recovering from smoking crack at the time of the April 6 raid. Clay-

ton also testified that although she had never paid money to Gregory for crack, she had provided him with sexual favors in exchange for crack on one occasion.

## B. Prior Proceedings

Following a three day trial, a jury convicted Gregory of the two pertinent counts of the indictment. Prior to sentencing, Gregory filed a *pro se* motion requesting that his sentence be vacated, citing eighteen instances of the ineffectiveness of his trial counsel. After allowing Gregory's lawyer to withdraw and appointing new counsel, Judge Beatty conducted a hearing on Gregory's ineffective assistance allegations at the start of the sentencing hearing. At the conclusion of extensive testimony about the trial lawyer's conduct, Judge Beatty found the performance of counsel was adequate and denied the motion.

Gregory also argued that the relevant conduct for purposes of the Sentencing Guidelines should be limited to the 22.8 grams he gave to Agent Watson on March 31. Citing the fact that each transaction had taken place at Gregory's residence, that Gregory had served as a gatekeeper and go-between in each of the transactions, and that Gregory had been convicted of conspiracy, Judge Beatty found that Gregory was criminally responsible for all five transactions, representing 104.4 grams of cocaine. Accordingly, Gregory was sentenced to 135 months incarceration.

## II.

## ANALYSIS

### A. Sufficiency of the Evidence

■ Gregory asserts that the evidence was not sufficient to sustain his conviction. To his credit, appellant's counsel concedes that there is nothing in the record that supports this issue on appeal. He is eminently correct. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Campbell,* 985 F.2d 341, 345 (7th Cir.1993).

## B. Evidence of Prior Bad Acts

■ Gregory contends that the testimony of Vivian Clayton was improperly admitted under Federal Rule of Evidence 404(b). In reviewing decisions to admit evidence under Rule 404(b), we reverse "only upon a showing of abuse of discretion" by the trial court. *See United States v. Kramer,* 955 F.2d 479, 491 (7th Cir.1992) (quoting *United States v. Chaimson,* 760 F.2d 798, 808 (7th Cir.1985)).

■ Gregory contends that Clayton's testimony about their mutual drug use on April 6, 1994 only established that Gregory was a crack user, and consequently its probative value in establishing his conspiratorial activities was outweighed by the danger of undue prejudice. Gregory also contends that Clayton's testimony that she provided the defendant with sexual favors in exchange for narcotics was unduly prejudicial. Although under the Federal Rules of Evidence, uncharged misconduct by a criminal defendant may not be introduced as evidence of bad character or propensity to commit the crime charged, such "bad acts" may be admitted to demonstrate motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Fed. R.Evid. 404(b). Under circuit precedent, the test for admissibility under Rule 404(b) is whether the evidence (1) is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) is sufficient to support a jury finding that the defendant committed the similar act, and (4) has probative value which is not substantially outweighed by the danger of unfair prejudice. *See, e.g., United States v. Evans,* 27 F.3d 1219, 1232 (7th Cir.1994).

■ Gregory does not challenge the similarity or proximity in time of the transactions to which Clayton testified to his course of conduct between March 23 and April 6, 1994. Nor does Gregory challenge the sufficiency of the testimony to support a jury finding that Gregory committed the alleged misconduct. Gregory limits his appeal to challenging the relative probative and prejudicial value of admitting such evidence. At trial, the government argued that Clayton's testimony was evidence of Gregory's knowledge and intent with respect to both the conspiracy and the March 31 distribution of cocaine. Prosecutorial production of evidence of knowledge and intent was necessary to rebut Gregory's assertions at trial, which attempted to convince the jury that Gregory had "clean hands" because he did not touch Watson's money, and that he lacked the intent to distribute cocaine or to profit from the conspiracy. Clayton's testimony concerning Gregory's use of cocaine on April 6 and her previous exchange with the defendant was probative with respect to intent because it helped establish that Gregory knew that narcotics were stored at his house, that he was associating himself with the storage, distribution, and consumption of cocaine, and that he was familiar with the commercial possibilities of trading in cocaine. *See United States v. Liefer,* 778 F.2d 1236, 1242–43 (7th Cir.1985). In context, this evidence was not so shocking as to warrant its exclusion. We perceive no abuse of discretion by the trial judge.

■ Gregory also argues that because Judge Beatty did not offer a limiting instruction on Clayton's testimony, the district court failed to reduce the prejudicial effect of the evidence. Unfortunately for Gregory, this instruction was not requested at trial. The standard of review for failure to give an unrequested *in limine* instruction is plain error. We find no plain error in the record presented. *See Liefer,* at 1244.

## C. Ineffective Assistance of Counsel

■ Gregory's *pro se* motion below raised eighteen alleged deficiencies in his trial counsel's performance. In a post-trial hearing, Judge Beatty found that each of these claims was insufficient to constitute ineffective assistance of counsel. With one exception, Gregory's appellate counsel has not suggested that Judge Beatty may have been in error with respect to individual allegations in Gregory's motion. Instead, Gregory's appellate counsel urges the court to find that the "cumulative" impact of the trial counsel's conduct was tantamount to ineffective advocacy. In asking for consideration of the eighteen claims

*en masse*, Gregory's appellate counsel has failed to "identify specific acts or omissions" that were deficient. *See, e.g., United States v. Herrera–Rivera*, 25 F.3d 491, 496 (7th Cir.1994). This is a prerequisite to raising a claim of ineffective assistance of counsel; to ask us to consider such claims collectively is inappropriate. *See* Fed.R.App.P. 28(a); *Real Estate Data, Inc. v. Sidwell Co.*, 809 F.2d 366, 376 n. 11 (7th Cir.1987) (generic contentions of error unsupported by legal argument will not be considered on appeal).

■ Gregory's appellate counsel has singled out trial counsel's failure to ask for a limiting instruction on Clayton's testimony as the sole instance of ineffective assistance of counsel meritorious enough to pursue on appeal. In order to prevail on an ineffective assistance of counsel claim, Gregory is required to demonstrate that his counsel's performance was deficient, and that this deficiency so prejudiced the presentation of the defense as to render the result of the proceeding "fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993); *see also United States v. Rodriguez*, 53 F.3d 1439, 1448–49 (7th Cir.1995).

■ It should be noted that Gregory's trial counsel did attempt to exclude Vivian Clayton's testimony, both by objection in open court and in a bench conference. Gregory has not brought any case to our attention suggesting that the failure to proffer a Rule 404(b) limiting instruction constitutes objectively deficient performance. Indeed, the decision not to request a limiting instruction is solidly within the accepted range of strategic tactics employed by trial lawyers in the mitigation of damning evidence. If the lawyer cannot stop the evidence from being admitted, it is perfectly rational to decide not to draw further attention to it by requesting a motion for limiting instruction. *Cf. Biggerstaff v. Clark*, 999 F.2d 1153, 1155 (7th Cir. 1993) (discussing the same principle of trial practice under the Indiana Rules of Evidence).

In any case, the testimony of other witnesses at trial ensured that the result of the trial was not "fundamentally unfair or unreliable." *See Lockhart*, 506 U.S. at 369, 113 S.Ct. at 842; *Liefer*, at 1253. In light of Watson's and Williams' testimony about Gregory's participation in the conspiracy, the failure of Gregory's trial counsel to request a limiting instruction did not render the result of the trial fundamentally unfair.

*D. Relevant Conduct During Sentencing*

Gregory's final argument on appeal is that the district court erred in calculating the amount of cocaine for which he should be held criminally responsible. Gregory suggests that the district court should have distinguished between (1) the 22.8 grams of cocaine Gregory actually gave to Agent Williams on March 31, (2) the 23.7 grams for which Gregory functioned as an intermediary between Williams and Watson in the two transactions on March 28, and (3) the 57.9 grams which Watson gave to Williams in the transactions of March 23 and April 6, during which Gregory was present but did not function as an intermediary. During the sentencing hearing, Judge Beatty found that the five drug transactions all constituted relevant conduct in the course of the conspiracy.

The base offense level for participation in a conspiracy to distribute narcotics is assigned by determining the quantity of drugs for which the defendant can be held criminally liable in furtherance of the conspiracy. Under U.S.S.G. § 1B1.3(a)(1)(B), relevant conduct within the context of a conspiracy includes all "reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." On review, a district court's sentencing decisions will be "upheld so long as the Guidelines were correctly applied to findings of fact that were not clearly erroneous." *United States v. Vopravil*, 891 F.2d 155, 157 (7th Cir.1989). Gregory argues that the government introduced no evidence to support a finding that he distributed narcotics in the March 23, March 28, and April 6 transactions. This argument misses the mark. The relevant issue for determining relevant conduct in a conspiracy is not whether the defendant actually performed an illegal act, but whether the defendant's actions were in furtherance of the illegal acts of co-conspirators of which the defendant had actual awareness or reasonable foresight. *See, e.g., United States v. Edwards*, 945 F.2d 1387, 1396–97 (7th Cir. 1991).

The evidence at trial established that Gregory and Watson were engaged in a conspiracy whereby shortly after Watson's release from prison on March 7, 1994 (1) Watson and Gregory pooled money, (2) which Watson used to purchase cocaine, (3) which was stored and sold from Gregory's residence, while (4) Gregory answered the door, provided security, and otherwise acted as a facilitator to the sale of narcotics. During the sentencing hearing, Judge Beatty specifically found that Gregory "knew what was going on in his house, and he acquiesced in it, he participated in it" by functioning either as the "doorman" or the "go-between" in the March 23, 28, and 31 transactions. Judge Beatty also found with respect to the April 6 transaction that Gregory was present and had once again allowed Watson to sell and store cocaine at his residence. These findings were fully supported by the evidence. This history is clearly sufficient to support a finding that Gregory's relevant conduct should be measured by the sale of 104.4 grams. *Cf. United States v. Duarte,* 950 F.2d 1255, 1263 (7th Cir.1991).

### III.

### CONCLUSION

For the foregoing reasons, we AFFIRM the defendant's conviction and sentence.