**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lawrence Ronald WATSON, Mack H. Banks and Willie Davis, Defendants-Appellants.**

**No. 77–2199.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1978.

Decided Nov. 24, 1978.

Paul Bradley and Robert Bailey, Chicago, Ill., for defendants-appellants.

Charles B. Sklarsky, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SPRECHER, TONE and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants Lawrence Ronald Watson, Mack H. Banks, and Willie Davis were

found guilty of robbing [1] the Second Federal Savings and Loan Association of Chicago of $17,145.00 on May 2, 1977.[2] At issue are the post-arrest identifications of Watson and Banks, the exclusion of the testimony of defendants' cross-racial identification expert, the existence of probable cause for the arrest of Davis and the admission of his post-arrest statement, and, lastly, the court's rulings concerning the testimony of Davis' character witness, Muhammed Ali. We affirm.

### Post-Arrest Identification of Watson and Banks

■ Watson and Banks contend that their post-arrest identifications by a bank employee were impermissibly suggestive. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The government concedes that the one-on-one "show up" identification in this case was inherently suggestive, but argues that other facts and circumstances establish that the procedure used was permissible and that the resulting identifications were reliable. We agree.

*Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), established a standard based on "the totality of the circumstances." *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), stressed the same totality without adopting a strict exclusionary rule. More recently, *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), drawing from those prior cases concludes that "reliability is the linchpin in determining the admissibility of identification testimony." In testing reliability the *Manson* Court refers us to the factors set forth in *Biggers,* 409 U.S. at 199–200, 93 S.Ct. 375. We will briefly consider the application of each of those factors.

■ Within minutes of the robbery police arrived on the scene. A police broadcast alerted other police in the vicinity, one of whom spotted Banks and Watson, followed their car, observed them toss out a gun, and then made the arrest. This arrest is not questioned. Within two hours of the robbery, both Banks and Watson were positively identified at the police station by the bank employee as two of the robbers. These two defendants had been placed in a room with two police officers and viewed by the bank employees through a one-way window from an adjoining room. The trial court found, the government concedes, and we agree, that it was an inherently suggestive "show up."

This case is stronger than the prior cases we have mentioned because of the exigent circumstances justifying to some extent the way the identification was handled. The robbery had happened only a short time before and the search was on for all involved before their appearances could be changed, the area of necessary search broadened, or the apprehension of the perpetrators otherwise made more difficult. The quick identifications while the eyewitness' recollection was still fresh narrowed and advanced the police search for the other suspects. Similar justifications were not present in *Biggers* or *Manson.*

The opportunity for the identifying bank employee to see during the robbery was very good as to Watson and sufficient as to Banks. The identifying bank employee, one of the threatened victims, was in the center of the activity during the robbery. Both daylight and natural light illuminated the bank and its entrance during the fifteen minutes of the robbery.

The identifying bank employee was not an outside casual observer but an experienced teller with special identification training. Although one of the defendants wielded a sawed-off shotgun, the witness remained reasonably calm and paid attention to the defendants' appearances.

■ Good pre-identification descriptions of the defendants, considering the circum-

1. The statutory violations were 18 U.S.C. §§ 2113(a) and 2113(d). The latter subsection was applicable because life was put in jeopardy by the use of a dangerous weapon.

2. Watson was sentenced to four years imprisonment, and Banks and Davis each received six years imprisonment. A fourth person allegedly involved is a fugitive.

stances, were given by the identifying bank employee prior to the "show up." For the most part the descriptions were accurate but to the extent that they varied as to a few details the variations were minimal and of no significance. Some generality in a description does not make the identification inadmissible. *Israel v. Odom*, 521 F.2d 1370, 1375 (7th Cir. 1975).

The identification by the bank employee of both Banks and Watson at the show up was positive and unequivocal. That six months later this same bank employee was somewhat less certain in court does not make the evidence inadmissible. Even the trial judge observed that the appearances of Banks and Watson in the court-room were "vastly different" than at the time of the "show up."

The length of time between the robbery and the identification at the police station was short, thereby insuring good recollection on the part of the witness.

We find that there could be no serious question about the reliability of the identifications and therefore they were properly admitted.[3]

### The Arrest and Post-Arrest Statements of Davis

Davis claims that Special Agent Gary Aaron of the FBI had no probable cause to arrest him. Probable cause as the phrase suggests is a matter of probabilities involving the factual, practical considerations of everyday life upon which reasonable, prudent men, not legal technicians act. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *United States v. Ganter*, 436 F.2d 364, 368 (7th Cir. 1970). That the arrest resulted from good police work does not suggest at the same time that there is a substantial question about probable cause.

A bank employee observed an E/Z Truck Rental van in front of the bank during the robbery. It was quickly surmised by the police that it was the getaway vehicle. At the time Watson and Banks were arrested, police found the rental receipt for the van and the identification used to rent the van in the name of an uninvolved person. An FBI agent, being advised about the robbery, went to that rental agency, got a description of the person who had rented the van in that borrowed name, and when Davis returned the van to the rental lot shortly after the robbery, the agent, seeing that Davis fit the description, arrested him as he attempted to leave without checking in at the rental office. We find that there was probable cause.[4] The claim of Davis that he was arrested on suspicion merely because he was a black male driving a rental truck conveniently overlooks the other facts and circumstances.

The oral statement made by Davis after his arrest fashioned as an effort to provide himself with an alibi, therefore, became admissible.

### The Exclusion of Proffered Testimony by Defendants of Cross-Racial Eyewitness Identification Expert

Banks and Watson offered the testimony of Dr. T. S. Luce, a professor of psychology at the University of Oklahoma, to the effect that in his opinion cross-racial and cross-ethnic eyewitness identifications were unreliable. The trial court, after conducting a thorough *voir dire* examination of Dr. Luce concerning his qualification and the nature of his expertise, ruled the proffered testimony inadmissible on the grounds it would not be of probative value to the jury.

---

3. Having applied the *Biggers* criteria to find reliability in the identifications, we note that other circumstances also show the reliability of that conclusion. At the time of arrest, Watson had in his pocket the wristwatch taken from one of the bank employees. The recovered gun thrown from the car in which Banks and Watson were riding bore Watson's fingerprints. The car used by Watson and Banks contained additional items of incriminating evidence.

4. Having found probable cause existed for the arrest of Davis in accordance with *Brinegar*, we note that other evidence later firmly established Davis' involvement in the crime. For example, the fingerprints of Davis were found on mail left at the bank by the first robber who entered the savings and loan building masquerading as a postman.

Expert testimony admissibility is governed by Rule 702 of the Federal Rules of Evidence. If the jury will be assisted by the specialized knowledge of an expert the jury may hear the expert opinion. It is a matter in which the trial court has broad discretion. *United States v. Cyphers*, 553 F.2d 1067, 1072 (7th Cir.), *cert. denied*, 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977).[5]

We agree with the trial judge that in view of the circumstances in this case involving prompt and positive identifications the expert's testimony could have been of little use to the jury. Luce stated other psychologists had done work in cross-racial identification prior to his study, but that it was generally considered to be inadequate. After considering Luce's own very limited picture test upon which he proposed to base his testimony, we are of the belief that work in that field still remains inadequate to justify its admission into evidence.

### *Character Witness Testimony*

Davis called Muhammed Ali as a character witness. When asked on direct examination about the honesty of Davis, the witness by his answer opened up the question of the general character of Davis. When the government, with approval of the trial court, proposed to cross-examine the character witness about Davis' arrests during the period that the witness had been acquainted with Davis, Davis withdrew the evidence already heard on direct. In the government's proposed cross-examination and the trial court's ruling, we find no conflict with *Michelson v. United States*, 335 U.S. 469, 475–79, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Rule 405(a) of the Federal Rules of Evidence permits inquiry during cross-examination of a character witness by inquiry as to relevant specific instances of the defendant's conduct. At the time of its ruling after a side bar discussion resulting

in the withdrawal of the testimony by Davis, the trial court advised the jury about the final ruling. Davis now objects that the trial judge's comments had in them some suggestion of wrongdoing on the part of Davis and were therefore prejudicial. Davis reads much more into the court's remarks than we do. We find no prejudice and no error.

There remains no doubt about the guilt of all defendants and that guilt was fairly determined.

AFFIRMED.

---

5. *United States v. Amaral*, 488 F.2d 1148 (9th Cir. 1973), *United States v. Brown*, 501 F.2d 146 (9th Cir. 1974), and *United States v. Brown*, 540 F.2d 1048 (10th Cir. 1976), have affirmed refusals to admit the testimony of psychological experts in the field of eyewitness identification, but since among other things they comment on that testimony invading the province of the jury, we need not rely upon them in view of Rule 704 of the Federal Rules of Evidence.