**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Leon HUDSON and Reginald Smith,
Defendants–Appellants.**

Nos. 88–2561, 88–2567.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1989.

Decided Sept. 11, 1989.

Elsa C. Lamelas, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee U.S.

Robert Crawford, Milwaukee, Wis., for defendant-appellant Leon Hudson.

Michael L. Chernin, Milwaukee, Wis., for defendant-appellant Reginald Smith.

Before CUMMINGS and KANNE, Circuit Judges, and GRANT, Senior District Judge.*

KANNE, Circuit Judge.

On November 19, 1986, defendants Leon Hudson and Reginald Smith entered the Eaton Employee Credit Union in Milwaukee, Wisconsin. Smith asked a teller on duty for change. As she opened her cash drawer, Smith leaped over the counter and reached into the drawer. Hudson attempted to vault over the counter, but could not do so. He then ran around the counter and tried to open other drawers. The two defendants stole a total of $1,263.00. According to the testimony of Theresa Imanuele, the victim teller, and Susan Calderon, the

---

* The Honorable Robert A. Grant, United States Senior District Judge for the Northern District of Indiana, is sitting by designation.

credit union president, two men had come into the credit union two days earlier to ask for change. Imanuele testified that the taller man (Smith) wore a hat "just like the man who robbed me on Wednesday the 19th." Hudson was wearing this same hat during a later counter-jumping incident on December 2, 1986 (discussed below) and at the time of his arrest on December 5, 1986.

Shortly after the theft, Imanuele made a tentative photo identification of Hudson and a positive identification of Smith. Video surveillance cameras recorded the theft. Numerous finger and palm prints of the defendants, moreover, were found on the credit union counter.[1]

The defendants originally were convicted in April of 1987 of entering a credit union with the intent to commit a larceny in violation of 18 U.S.C. § 2113(a). Last year, this court reversed these convictions, based on the inadmissibility of some of the government's evidence under Rule 404(b). *United States v. Hudson*, 843 F.2d 1062 (7th Cir. 1988) (*Hudson I*). We remanded this case to the district court for a new trial. In July of 1988, the case was retried, and the defendants were again convicted. Hudson and Smith appeal their second conviction on numerous evidentiary grounds. For the reasons set forth below, we affirm.

**1.** There was a dispute at trial as to the accuracy of the government's fingerprint identification techniques with respect to the palm prints left by Hudson when he attempted to vault over the counter. First, Hudson claims that the FBI examiner failed to recognize that the partial, left palmprint taken from the counter of the Eaton Employee Credit Union and identified as his was a "partial reversal." Reversal occurs when pressure applied on the fingers or palms that come into contact with an object causes perspiration from the pores located on the ridges to flow into the furrows. This perspiration is deposited upon the object, and thus when fingerprint powder is applied, it outlines the furrows and not the ridges. A partial reversal occurs when some of the powdered areas of a print are ridges and some are furrows. Second, Hudson claims that the Milwaukee police examiner failed at his first trial to recognize the reversal, and then perjured himself at the second trial explaining the discrepancy.

We need not, however, address these arguments or the government's response thereto for several reasons. First, Hudson presents this dispute (and other quarrels he has with the

## I. Admissibility of Evidence under Rule 404(b)

### A. Four–Part Test for Admissibility

Rule 404(b) of the Federal Rules of Evidence provides:

> **Other crimes, wrongs or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ This circuit has established a four-part test for whether evidence is admissible under Rule 404(b). First, the evidence must be directed toward establishing a matter in issue other than the defendant's propensity to commit the act charged. Second, the other act must be similar enough and close enough in time to be relevant to the matter in issue. *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir. 1984). Third, the evidence must be "sufficient ... to support a finding by the jury that the defendant committed the similar act." *Huddleston v. United States*, 485 U.S. 681, ——, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988).[2] Finally, the proponent

government's evidence) as a dispute over whether the district court's evidentiary rulings were harmless error. Because we believe that the district judge did not commit error in his complained-of evidentiary rulings, we need not discuss whether these rulings would have been harmless had they been error. Second, even if Hudson were to have made a sufficiency of the evidence argument, it is not our function to reweigh the evidence or to assess the credibility of the witnesses in determining whether there is sufficient evidence to support the jury's verdict. *See, e.g., United States v. D'Antoni*, 874 F.2d 1214, 1220–21 (7th Cir.1989); *United States v. Whaley*, 830 F.2d 1469, 1472–73 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988) *and cases cited therein*. Likewise, we need not address Smith's harmless error arguments.

**2.** Before the Supreme Court's decision in *Huddleston*, the evidence had to be clear and convincing. *Shackleford*, 738 F.2d at 779. In *Huddleston*, however, the Supreme Court "invalidated the third prong of the *Shackleford* test." *United States v. Rollins*, 862 F.2d 1282, 1294 (7th

of the evidence must show that the probative value of the evidence is not substantially outweighed by its prejudicial effect. *Shackleford*, 738 F.2d at 779. We note as well that the judge's determination of whether evidence is admissible in the first place under Rule 404(b) is subject to the abuse of discretion standard of review *United States v. Connelly*, 874 F.2d 412, 415 (7th Cir.1989).

**B.** *The Three Other Counter–Jumpings*

At trial, the government introduced evidence concerning three other, similar, acts of theft. The defendants challenge the district court's admission of this evidence on appeal on the ground that it does not satisfy the first and third parts of the *Shackleford/Huddleston* test discussed above. First, they argue that under *Huddleston,* the district court was required to instruct the jury that it had to find by a preponderance of the evidence that the defendants committed the three acts. Second, they argue that this evidence was not admissible to show either identity or intent.

**1.** *The Three Incidents*

On October 11, 1985, two black men in their late teens, later identified by eyewitness testimony and fingerprint evidence as Smith and Hudson, respectively, entered the Security Savings and Loan Association in Milwaukee, Wisconsin, and asked for change. According to Giselle Jacobs, the teller who testified at trial, it was the taller thief (that is, Smith) who asked her for change. As the teller opened her cash drawer, a third man walked in, and the three men lunged over the counter toward the cash drawer, grabbed cash and fled.

On November 1, 1985, defendants were arrested for the robbery of Midwest Savings and Loan Association in Bismarck, North Dakota. Laurie Schiermeister, the victim teller who testified at trial, stated that during the afternoon of November 1, two sixteen or seventeen year old black men entered Midwest Savings and approached her. The taller man (once again

identified as Smith) asked her for change. Schiermeister left her register and approached Joyce Thomas, another teller, to ask for change. When she turned around, she saw the two men behind the counter grabbing money. Schiermeister and Thomas both made a positive photo identification of Smith. Thomas made a tentative photo identification of Hudson. Hudson, Smith and a third, older black man were arrested later that afternoon in a van matching the description given to the Kidder County Sheriff's Department. Hudson, who gave a false name when he was arrested, was charged with grand theft, but his subsequent conviction therefor was not introduced at trial.

On December 2, 1986, two young black men entered the Mutual Savings and Loan Association office at Milwaukee, Wisconsin. The teller in this instance, Mariella Barnes, testified at trial that she noticed the two men as she walked out of the vault holding approximately $2,700.00 in cash. As a precaution, she put the money aside, and asked the men if she could help them. The taller man (identified in a lineup and again in court as Smith) said that he needed change. Barnes opened her cash drawer and gave the man change. The second, shorter man then said that he also needed change, but when Barnes reopened her cash drawer, both men vaulted the counter. They then emptied her drawer completely, went to a second drawer, emptied it, took the $2,700.00 in cash Barnes had set aside and fled. Barnes also made an identification of Smith as being the taller thief appearing in the surveillance photos of this incident. One photo in the incident depicts the shorter thief wearing a distinctively-shaped hat. This hat is identical in appearance to the hat worn by Smith on November 17 and 19. Hudson was wearing this hat at the time of his arrest. Barnes testified that the hat looked just like the one that the shorter thief wore during the robbery.

**2.** *Instruction of the Jury*

■ Both defendants argue that under the Supreme Court's decision in *Huddle-*

Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989); *see also United*

*States v. Connelly,* 874 F.2d 412, 415 n. 5 (7th Cir.1989).

*ston*, the trial judge erred in refusing to instruct the jury that it had to find that the government had proved by a preponderance of the evidence that the defendants had in fact committed the similar acts before it could consider whether these acts showed identity or intent. We do not believe, however, that *Huddleston* requires such an instruction.

The language in *Huddleston* that evidently led the defendants to make this argument is as follows:

> We conclude that a preliminary finding by the court that the Government has proved the act by a preponderance of the evidence is not called for under Rule 104(a). This is not to say, however, that the Government may parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo. Evidence is admissible under Rule 404(b) only if it is relevant. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." ... In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor.... In the instant case, the evidence that petitioner was selling the televisions was relevant under the Government's theory only if the jury could reasonably find that the televisions were stolen.
>
> Such questions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b)....
>
> In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact—here, that the televisions were stolen—by a preponderance of the evidence....

485 U.S. at ——, 108 S.Ct. at 1501 (footnote and citations omitted).

Before the Supreme Court's decision in *Huddleston*, this court evaluated similar acts evidence under Rule 104(a), and required that the proponent of the similar acts evidence prove to the trial court by clear and convincing evidence that the defendant committed the similar act. *United States v. Byrd*, 771 F.2d 215, 222 & n. 4 (7th Cir.1985). The Eighth, Ninth and District of Columbia Circuits were in accord with this view, at least to the extent that they required proof of the act to the trial judge by clear and convincing evidence. *See United States v. Weber*, 818 F.2d 14, 14 (8th Cir.1987); *United States v. Vaccaro*, 816 F.2d 443, 452 (9th Cir.), *cert. denied*, 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987); *United States v. Lavelle*, 751 F.2d 1266, 1276 (D.C.Cir.), *cert. denied*, 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985). The First, Fourth, Fifth and Eleventh Circuits, however, analyzed the admission of prior bad acts under Rule 104(b), and required the judge only to determine that there was sufficient evidence from which a jury could find that the defendant committed the misconduct. *United States v. Ingraham*, 832 F.2d 229, 235 (1st Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988); *United States v. Martin*, 773 F.2d 579, 582 (4th Cir.1985); *United States v. Dothard*, 666 F.2d 498, 502 (11th Cir.1982); *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir.1978) (en banc) *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

The defendants maintain that the *Huddleston* decision requires a shift away from analysis by the district judge of relevancy under Federal Rule of Evidence 104(a), and toward enforcement of the relevancy requirement through use of Rule 104(b). The government's position, on the other hand, is that Rule 104(b) only comes into play when the determination presents "conditional facts;" that is, where prior similar acts are relevant and conditioned on a fact to be decided by the jury.

The quoted language from *Huddleston* indicates that in deciding that the govern-

ment only had to show sufficient evidence such that a jury could find that the defendant committed the act, the Supreme Court decided, whether by assumption or by implication, that the relevancy of evidence admitted under Rule 404(b) should be evaluated under Rule 104(b) in every instance. Since *Huddleston* was decided, at least one other circuit has taken this view. *United States v. Record,* 873 F.2d 1363, 1374 (10th Cir.1989) (quoting *Huddleston,* 485 U.S. at ——, 108 S.Ct. at 1502).

■ Although *Huddleston* requires that admission of prior bad acts under Rule 404(b) always must be evaluated by the district judge under the conditional relevancy test of 104(b), the district judge is not required to instruct the jury that it must find by a preponderance of the evidence that the defendant committed the similar act. We are in accord with *United States v. Sliker,* 751 F.2d 477, 500 (2d Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985), where the Second Circuit said: "We understand the general rule to be that the judge is permitted but not required to deliver a specific instruction to the jury to consider particularly any preliminary question under Rule 104(b).... [T]he decision whether or not to give [such an instruction] lies in the discretion of the trial judge." *Id.*

■ The district judge did not abuse his discretion in this case by refusing to give the jury an instruction that it had to find that Hudson and Smith committed the prior similar acts. From the testimony at trial, the jury was aware that whether the thieves in the three incidents were Hudson and Smith was in dispute. The judge instructed the jury on the reliability of eyewitness testimony and told it to consider the credibility of each identification witness in the same way as that of any other witness. Moreover, the district judge properly instructed the jury that they were judges of the facts. *Cf. id.* at 500. Thus, it was not an abuse of discretion to refuse to instruct the jury on this issue.

■ Furthermore, we believe that there was sufficient evidence presented in this case for a jury to find that Hudson and Smith committed the three other thefts. Hudson argues in particular that there was insufficient evidence that he participated in the Midwest Savings and Loan theft. All that the evidence shows, he contends, is that he was in the presence of Smith and a second black man when they were arrested on the interstate outside of Bismarck. Hudson maintains that the jury only could find that Hudson was the shorter thief in the Bismarck robbery by "piling inference upon inference;" that is, by inferring this conclusion from those two facts. We disagree. One teller made a tentative photo identification of Hudson, and Hudson gave a false name when he was arrested. From all this evidence, a jury could find that Hudson committed the theft.

### 3. *Admissibility to Show Identity or Intent*

The defendants argue that the district court was incorrect in ruling that evidence of the three prior counter-jumpings was admissible to show identity and intent. With respect to identity, Hudson argues that the *modus operandi* of the thieves in the instant theft and the three prior incidents was not sufficiently a "signature offense" to show identity. We disagree. *Shackleford* requires only that the prior acts bear "a singular strong resemblance to the pattern of the offense charged." 738 F.2d at 783 (quoting *United States v. Jones,* 438 F.2d 461, 466 (7th Cir.1971)).

■ The three prior events and the instant case have sufficient points in common for the prior acts to be admissible as *modus operandi* evidence under the identity exception to Rule 404(b). *Connelly,* 874 F.2d at 416–17. The prior incidents and the theft in this case all involved at least two men coming into a credit union, the taller man asking for change, and both men leaping over or running behind the counter when the teller opens her drawer to get the change, grabbing cash, and fleeing. We think these incidents are "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof." *Shackleford,* 738

F.2d at 783 (citations omitted).[3]

The defendants next argue that this evidence was inadmissible to show intent. This is because, defendants contend, they should have been allowed to concede the issue of intent at trial, and thus prevent the government from introducing evidence of intent. They argue that the trial court incorrectly interpreted this court's decision in *United States v. Liefer*, 778 F.2d 1236 (7th Cir.1985) as creating a *per se* rule against barring the government's submission of evidence by such concessions.

In *Liefer*, this court said: "Because the government charged Liefer with a specific intent crime, it had the right to present other-acts evidence regardless of Liefer's attempt to concede the issue." *Id.* at 1243. We distinguished cases involving crimes where "intent is only a formal issue that can be inferred from the act," and noted that "[i]ntent is never merely a 'formal issue' when the defendant is charged with a specific intent crime." *Id.* at 1242 (quoting *Shackleford*, 738 F.2d at 781). We do not see how any trial court could interpret this discussion as doing anything *other than* creating a *per se* rule for cases involving specific intent crimes. *Cf. United States v. Manganellis*, 864 F.2d 528, 534-39 (7th Cir.1988) (interprets *Liefer* as making the fact that the defendant therein was prepared to concede intent irrelevant; however, crime in the instant case was not a specific intent crime); *see also United States v. Harrod*, 856 F.2d 996, 1000-01 (7th Cir.1988) (where defendant is charged with a specific intent crime, defendant does not have to place intent in issue before the government can introduce Rule 404(b) evidence). Intent was an element of proof in this case because the defendants were charged with a specific intent crime, and thus defendants could not, by conceding this issue, bar the government from submitting evidence to prove an element of the offense. Hence, the government's proffered evidence was admissible to show intent.

## C. *The Government's Cross-Examination of Defendants' Witnesses*

In an attempt to disprove at trial that the charged offense and the similar acts were "signature offenses," defendants called as a witness Special Agent Dan Craft, the Milwaukee FBI bank robbery coordinator. The defense elicited testimony from Craft concerning thirty-seven incidents of counter-jumping at financial institutions in the Milwaukee area occurring between September 16, 1985 and January 26, 1987. This evidence was introduced by the defendants over the government's objection pursuant to Rule 803(8)(C) of the Federal Rules of Evidence.[4] The government, however, was permitted to cross-examine Special Agent Craft, and elicited testimony that most of these instances were dissimilar to the theft in this case or to the prior incidents.[5]

Defendants argue that Rule 803(8)(C) is "a one way street," allowing it to introduce public records "against the government," but not allowing the government to cross-examine the witness who testifies about these records. Defendants cite no persuasive authority for this proposition. Indeed, there is none. Other circuits have noted, and we agree, that evidence admitted under this exception is in fact subject to cross-examination, at least under limited

**3.** As the government points out, moreover, of the thirty-seven incidents of counter-jumping described by Special Agent Craft (discussed below) twelve involved silent thieves, fourteen involved lone thieves, three involved assaults and six or seven involved the use of a gun. The three remaining robberies include the charged offense and at least one (the government says two, but the record is not clear on this point) of the prior similar acts.

**4.** This rule provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

    **(8) Public Records and Reports.** Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth ... (C) ... against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

**5.** *See supra* note 4.

circumstances. *Ellis v. International Playtex, Inc.*, 745 F.2d 292, 303 (4th Cir. 1984) ("Although the rule is designed to assume the admissibility of a report in the absence of affirmative indicia of untrustworthiness, there is no indication that Congress intended for the reports to escape searching examination. Allowing the jury to evaluate the reports after careful cross-examination and the presentation of expert testimony, therefore, serves both these functions well; it permits admission without sacrificing scrutiny."); *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1316 (3d Cir.1978) (Rules 702 and 705, the latter of which allows disclosure of facts and data underlying an expert's testimony on cross-examination, provide a means of testing the reliability of reports admitted under 803(8)(C), where the government comes forward with some evidence which would impugn its trustworthiness).

### D. *Smith's Giving of a False Name*

When Smith was arrested on January 21, 1987 for the robbery of the Eaton Employee Credit Union, he gave the arresting officer a false name. Smith argues that the district court erred in admitting evidence that he gave a false name in order to show his intent to rob the Eaton Employee Credit Union two months earlier on November 19, 1986. He first maintains that the district judge did not give proper analysis to this evidence under Rule 404(b) and *Huddleston*. Smith did not make this argument in the district court, however, and therefore he cannot raise it on appeal absent a showing of plain error. *See, e.g., United States v. Smith*, 869 F.2d 348, 356 (7th Cir.1989). For there to be plain error, there must have been a "miscarriage of justice," implying "the conviction of one who but for the error probably would have been acquitted." *Id.* (citations omitted). Second, Smith argues that the giving of a false name does not prove one's intent to commit a robbery two months earlier. This argument is not carefully developed— Smith does not even cite the authorities he cited at trial—and therefore it too is waived. *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir.1987).

### II. Refusal by the District Judge to Admit Photographs

Hudson argues that he should have been permitted to introduce surveillance photographs from FBI files of some of the other counter-jumpings to show that other individuals, not he, committed the charged offense. At trial, Hudson's counsel characterized this as "using [Rule 404(b)] evidence to show identity in the same way the Government is except I am showing the identity of a third person." We note that we have serious reservations about use of photographic evidence in this manner. However, we need not reach this issue because there is insufficient evidence in the record that the individuals in the surveillance photographs committed the charged offense for them to be admissible.

### III. Exclusion of Expert Testimony on Witness Identification

At trial, defendants offered the testimony of Dr. Patricia Devine, a psychologist, to show: (1) the effect of stress upon identification; (2) the difficulty of cross-racial identification; (3) an overview of the memory process; and (4) the impact of a short viewing period upon the accuracy of an identification.

Defendants argue that the district court erred in determining that this evidence would not have been helpful to the jury. Second, they maintain that this court misapplied our holding in *United States v. Watson*, 587 F.2d 365, 368–69 (7th Cir. 1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979), by interpreting it as having established a *per se* rule against the admission of this type of testimony.

Under Federal Rule of Evidence 702:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Trial courts have broad discretion under this rule to admit or exclude evidence, and

their rulings will not be reversed absent an abuse of that discretion. *Smith,* 869 F.2d at 351 (citations omitted). In *United States v. Lundy,* 809 F.2d 392 (7th Cir. 1987), this court summarized the requirements in this circuit for admission of expert testimony when it said:

> Because experts are given special latitude to testify based on hearsay and third-hand observations and to give opinions, ... courts have cautioned that an expert must be qualified as an expert, provide testimony that will assist the jury and rely only on evidence on which a reasonable expert in the field would rely.... Courts agree that it is improper to permit an expert to testify regarding facts that people of common understanding can easily comprehend.

*Id.* at 395 (citations omitted); *accord Smith,* 869 F.2d at 351.

In *Watson,* we rejected the defendants' proffer of expert testimony on witness identification for two reasons. First, under the circumstances of that case involving prompt and positive identification, the expert's testimony would have been of little use to the jury. Second, we noted that we believed that work in the field of witness identification still remained inadequate to justify its admission into evidence. 587 F.2d at 369; *see also Smith,* 869 F.2d at 351–52 n. 4.

Defendants maintain that we should join those circuits that have held that this testimony now is sufficiently reliable in general to go to the jury, but which decide on the particular facts of the case whether or not to admit the evidence. *See, e.g., United States v. Moore,* 786 F.2d 1308, 1311–13 (5th Cir.), *reh'g denied,* 791 F.2d 928 (5th Cir.1986) (en banc) (although this type of testimony was formally considered inadmissible, it now is appropriate for consideration by the jury); *United States v. Downing,* 753 F.2d 1224, 1242–43 (3d Cir.1985) (even if the admission of this testimony otherwise satisfies Rule 702 (which should be determined after an on-the-record detailed proffer), it still can be excluded under Rule 403); *United States v. Smith,* 736 F.2d 1103 (6th Cir.), *cert. denied,* 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984) (although this type of testimony was formally considered inadmissible, it now is appropriate for consideration by the jury; however, exclusion of this testimony in this case was harmless error); *but see United States v. Christophe,* 833 F.2d 1296 (9th Cir.1987) (adheres to view that this type of testimony is unreliable).

We need not revisit the question whether this type of testimony is sufficiently reliable in general to go to the jury. It properly is excludable in any event under Rule 702 because it will not assist the trier of fact. Such expert testimony will not aid the jury because it addresses an issue of which the jury already generally is aware, and it will not contribute to their understanding of the particular dispute. *Cf. United States v. Fosher,* 590 F.2d 381 (1st Cir.1979); *accord Christophe,* 833 F.2d at 1299–1300; *but see Moore,* 786 F.2d at 1312; *Smith,* 736 F.2d at 1105–06 (based on proffer in this case, expert testimony will help the jury). Thus, we do not think that the district judge abused his discretion in excluding this evidence. Because this evidence properly was excluded as unhelpful, we need not address the government's contention that Dr. Devine was not qualified as an expert witness.

For the reasons discussed above, the judgment of the district court is AFFIRMED.