952 F.2d 1396
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Niger PIERRE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willie SWANN, Defendant-Appellant.
 Nos. 91-5021, 91-5048.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 4, 1991.
Argued Dec. 5, 1991.
Decided Jan. 24, 1992.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Frank A. Kaufman, Senior District Judge. (CR-90-166-K)
 Argued: Mark Lawrence Gitomer, Cardin & Gitomer, P.A., Baltimore, Md., for appellant Swann; Robert Reeves Harding, Assistant United States Attorney, Baltimore, Md., for appellee.
 On Brief: David E. George, Silver Spring, Md., for appellant Pierre; Richard D. Bennett, United States Attorney, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and SPROUSE, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In these consolidated appeals we review the convictions of Niger Pierre and William Swann (after a joint trial) for possession of heroin and conspiracy to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. Pierre contends on appeal that there was not sufficient evidence to sustain his conviction and that the trial court erred by not granting him offense level reductions under the Sentencing Guidelines for being a minimal participant and for acceptance of responsibility. Pierre also contends that there is not sufficient evidence to sustain the district court's finding for sentencing purposes that he was involved with ten to thirty kilograms of heroin. Swann contends on appeal that the district court should have suppressed evidence obtained from searches of his residence and that the court erred both in admitting and instructing on evidence of other acts under Rule 404(b) of the Federal Rules of Evidence. Finding no error, we affirm both convictions.
 
 
 2
 * On April 18, 1990, a federal grand jury in Maryland returned an indictment against Vincent Emerson Thomas and four co-conspirators, two of whom were Pierre and Swann. The other two alleged co-conspirators pleaded guilty and testified at the trial of Pierre and Swann. Thomas, then incarcerated in Italy, was not extradited in time to stand trial with Pierre and Swann, who were jointly tried and each convicted in November 1990. Pierre was sentenced to 151 months incarceration, and Swann was sentenced to 360 months incarceration.
 
 
 3
 Evidence of Pierre's participation in the narcotics conspiracy was initially gathered during an ongoing investigation of the activities of Thomas, the alleged head of a New York-based heroin import and distribution ring. Several witnesses identified Pierre as Thomas's bodyguard and driver and implicated him in the conspiracy. Witnesses testified that Pierre also acted as Thomas's courier, delivering heroin from New York to Baltimore, and often returning the money received for it. One witness described how Pierre delivered large amounts of heroin in clear plastic bags and helped count large sums of money, later laundering the same money in New York. Thomas's girlfriend testified that she knew of seven to ten drug related trips Pierre made to Maryland. She testified further that Pierre normally delivered between half a kilo and a kilo of pure heroin and that he picked up boxes of cash from her apartment in Silver Spring, Maryland, to transport to New York. Another witness testified that he saw Pierre between twenty and forty times with persons related to the conspiracy. Yet another went with Pierre to deliver a package from Thomas.
 
 
 4
 Witnesses testified of Pierre's attempts to branch out from the conspiracy and distribute additional heroin on his own. A state police trooper testified that he stopped Pierre for speeding and discovered large quantities of heroin-cutting agents in the back of Pierre's car. Also introduced at trial was Pierre's phone and appointment book, showing connections to persons identified as heroin smugglers and distributors. In our view, the evidence proving Pierre's connection with the conspiracy was overwhelming, and there is simply no merit to his contention of insufficiency.
 
 
 5
 Pierre was given a two level decrease for being a "minor participant" in the conspiracy. We reject his claim that the district court abused its discretion in denying him a four level decrease in his base offense level for being a "minimal participant" as provided in section 3B1.2 of the Sentencing Guidelines. Likewise, we do not believe that the court erred in denying a downward adjustment for acceptance of responsibility. We also believe that the evidence was sufficient to establish Pierre's involvement with ten to thirty kilograms of heroin for sentencing purposes.
 
 II
 
 6
 Swann challenges the admission of evidence seized as a result of a search of his residence on April 19, 1990, as being the fruits of an illegal search. He also challenges the admission under Federal Rule of Evidence 404(b) of money seized in the 1990 search and evidence gathered in connection with Swann's earlier arrest and conviction in 1986, as well as the district court's instructions regarding the 404(b) evidence.
 
 
 7
 The principal issue concerning the 1990 evidence is whether it was seized pursuant to a consensual search as contended by the government or whether Swann's consent was coerced. Eight officers were involved in the entry of Swann's residence. When the agents, armed with an arrest warrant, knocked at the door, a woman answered. After identifying himself, one of the agents asked for Swann. Upon learning that Swann was upstairs, several of the agents drew their guns, entered, and proceeded to the stairs where they saw Swann on the landing in his undershorts. The agents informed Swann that he was under arrest. They took him into his bedroom and placed him in handcuffs. The agents present then placed their revolvers in their holsters. There were four or five agents present in the bedroom and several others at precautionary stations in different parts of the house.
 
 
 8
 Evidence discloses that there was a stack of cash, later determined to be over $2,000, on the night table next to the bed. The principal agent testified that it was folded in a fashion peculiar to drug transactions. Drugs and drug paraphernalia were also on the night table.
 
 
 9
 After the guns were put away, Swann was read his Miranda rights. He answered that he understood them and, when asked for permission to search the room, agreed, stating "I have nothing to hide, no money, no guns, no drugs." As a result of the search which followed, an additional $3,350 was recovered from a safe in a closet in Swann's bedroom.
 
 
 10
 The district court allowed the government to introduce the drugs and money from the night table and the money from the safe as seized pursuant to a consensual search. It also held that the drugs and money from the night table were admissible under the plain view doctrine. Swann maintains that the money from the safe should not have been admitted because the search was not consensual. He argues further that the drugs and money on the night table should also have been excluded, as they were seized pursuant to the same search.
 
 
 11
 In Schneckloth v. Bustamonte, 412 U.S. 218, 227, 229, 233 (1973), the Supreme Court provided criteria by which the voluntariness of a consent to search can be determined:
 
 
 12
 [T]he question whether a consent to search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.... In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.... [I]t is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced.
 
 
 13
 Swann argues that under the Schneckloth criteria his consent was not voluntarily given. We do not agree. Although the arrest was not consensual, the record reflects that the arresting police officers gave Swann his Miranda warnings in a professional and nonthreatening manner. An inference may be drawn that Swann was embarrassed or uncomfortable when he gave his consent because he was handcuffed and dressed only in his undershorts. Standing alone, however, these circumstances simply are not sufficient to demonstrate that his consent to the search was coerced.
 
 
 14
 Furthermore, we are persuaded from our review of the record that the evidence taken from the night table was in plain view of the officers when they took Swann to the bedroom for the purpose of allowing him to dress. This evidence was, therefore, properly admitted under the plain view doctrine.
 
 
 15
 The government used the money seized in the 1990 raid, as well as testimony and photographs of drugs and money during the incident in 1986, to show that Swann intended to distribute drugs. Swann contends that this evidence was erroneously admitted as evidence of other bad acts in violation of Federal Rule of Evidence 404(b).
 
 Rule 404(b) states that:
 
 16
 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 17
 We have held that evidence of extrinsic acts is admissible when the acts are (1) relevant to an issue other than character, (2) necessary, and (3) reliable. United States v. Mark, 943 F.2d 444, 447 (4th Cir.1991) (citation omitted). See also United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988). As we pointed out in Marks, "[w]e have subscribed to the view of [Rule 404(b) ] as an inclusionary rule which admits all evidence of other crimes relevant to an issue in a trial except that which tends to prove only criminal disposition." Marks, 943 F.2d at 447 (citation and internal quotation marks omitted).
 
 
 18
 Swann concedes that the evidence was admitted to show evidence of intent to deal in heroin, but he focuses on the "necessary" prong of the test. He argues that the evidence was improperly admitted because intent was not an issue at trial. He urges that there was an abundance of other evidence from which the jury could find intent, that he never took the stand to claim an innocent state of mind, and that the prior acts evidence was therefore unnecessary "piling on" by the government. Swann also stresses that in 1986 he only pleaded guilty to simple possession and that the evidence of his crime in 1986 could not be evidence of narcotics activity in 1990. Finally, he urges that the money recovered from the safe during the 1990 search was not linked to any narcotics distribution.
 
 
 19
 Swann was charged with conspiracy to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. 21 U.S.C. § 841(a)(1) states, in part, that "it shall be unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...." Thus, the government was required to show at trial that Swann conspired to knowingly or intentionally distribute heroin.
 
 
 20
 The heroin and other evidence seized in the 1986 raid, in our view, can be properly considered as evidence of an intent to distribute even though Swann in the plea bargain pleaded guilty to simple possession. It could be inferred that distribution, not mere possession, was involved from the fact that fifty bags of heroin were found, as well as a large amount of cash and drug paraphernalia. Likewise, the quantity of money recovered from the night table in 1990, especially in light of the fact that it was folded in a manner peculiar to drug transactions, can clearly be considered as evidence of distribution and intent. The evidence obviously supports an inference that Swann was a distributor rather than a mere user of heroin.
 
 
 21
 We are not convinced that it was unnecessary for the government to introduce the prior acts evidence. We do not see how Swann's failure to take the stand and deny that he knowingly trafficked in heroin absolved the government from its responsibility to prove every element of its case, including knowledge and intent. Moreover, while the prior acts evidence was corroborative of testimony from witnesses that Swann was involved in the distribution of heroin, we are unconvinced that the live testimony was so irrebuttable as to make the prior acts evidence unnecessary.
 
 
 22
 The decision of whether to admit evidence under the authority of Federal Rule of Evidence 404(b) is, of course, in the sound discretion of the trial court. United States v. Greenwood, 796 F.2d 49, 53 (4th Cir.1986). When deciding to admit evidence under Rule 404(b), the trial judge must also weigh the probative value of the evidence against the danger of undue prejudice under Federal Rule of Evidence 403. United States v. King, 768 F.2d 586, 588 (4th Cir.1985). Applying the appropriate deference to the decision of the district court, we are not convinced that it abused its discretion in admitting this evidence. The admission of this testimony and evidence was certainly proper in light of Swann's defense that he did not engage in drug distribution and that the government had framed him by suborning perjury from its witnesses.*
 
 
 23
 Swann next argues that Huddleston v. United States, 485 U.S. 681 (1988), required the district court to give the jury the following instruction: "Evidence has been introduced by the government of similar acts done by the Defendant Swann. In deciding whether to consider those similar acts to prove knowledge and intent, you must first be persuaded by a preponderance of the evidence that the acts alleged did in fact occur." We take no position on whether such an instruction is required by Huddleston. Compare United States v. Hudson, 884 F.2d 1016, 1021 (7th Cir.), cert. denied, 110 S.Ct. 3221 (1989) (Huddleston does not require district court to instruct jury that it must find defendant committed prior act by a preponderance of the evidence). We believe that Swann has waived any objection he may have by failing to raise it below or to suggest below the instruction he now proposes. See United States v. Love, 767 F.2d 1052, 1060 (4th Cir.1985), cert. denied, 474 U.S. 1081 (1986).
 
 
 24
 In view of the above, the judgments of the district court, both as to Pierre and Swann, are affirmed.
 
 
 25
 AFFIRMED.
 
 
 
 *
 We are likewise unpersuaded by Swann's argument that the money from the safe should have been excluded because it was not sufficiently linked to drug transactions