COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued at Alexandria, Virginia


WILLIE JONES, JR.

MEMORANDUM OPINION[*] BY
v.    Record No. 3453-01-2      JUDGE ROBERT J. HUMPHREYS
                                  JANUARY 7, 2003
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William H. Ledbetter, Jr., Judge

Leonard R. Piotrowski, Deputy Public Defender
(Office of the Public Defender, on brief),
for appellant.

Virginia B. Theisen, Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.


Willie Jones, Jr., appeals his conviction by a jury of two

counts of robbery. Jones contends the trial court erred in 1)

admitting into evidence testimony concerning Jones' conduct prior

to the robberies; 2) refusing to admit into evidence certain

letters; and, 3) finding the evidence sufficient, as a matter of

law, to support his convictions. For the reasons that follow, we

affirm.

---

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication. Further, because this opinion has
no precedential value, we recite only those facts essential to
our holding.

The issue Jones first raises on appeal concerns the trial court's admission of the testimony of Roy Hurd. Jones argues Hurd's testimony was hearsay not subject to any exception and therefore constituted inadmissible evidence of Jones' prior bad act. We disagree.

At trial, Hurd testified that he worked as a desk clerk at the Heritage Inn Motel, located at 5308 Jeff Davis Highway. He stated that he knew Jones because Jones had stayed at the motel on several occasions in the past. On January 7, 2001, Jones, who was not a guest at the motel at the time, approached Hurd and "said he was in need of money and wanted to know if [Hurd would] let him rob him and he would give [Hurd] part of the money." Hurd testified that he did not take Jones seriously, and told him "don't even joke like that because I'd never do anything like that."

The following day, Jones returned and proposed the robbery to Hurd again. Hurd testified that he again told Jones he would not "do anything like that and . . . don't kid around like that." Jones left, but returned an hour later, through the back door. Hurd stated that, at that time, Jones was wearing a "pair of pantyhose over his head and face." Jones' jacket was "open," and he had his left hand under the jacket "like he had something in his hand." He stated "this a robbery." Hurd told Jones "he could tell it was him." Hurd testified that Jones was surprised that

-

Hurd was able to identify him and seemed disappointed. Jones then left.

Subsequently, on January 19, 2001, the Heritage Inn was robbed. On that date, Helen Blake was working as the front desk clerk. Blake testified that between 10:00-10:30 p.m., she was in the break room eating dinner when she heard wood cracking. She turned to find that a man had kicked in the door. Blake described the man as a slim, "light-skinned black man," approximately 5 feet 8 inches tall. She stated that he wore a "plum-colored cloth jacket," "gray sweatpants," "black tennis shoes and a black do-rag over [his] face and [his] head."

Blake testified that the man's "jacket was open and he put his finger . . . under the jacket and pointed it," and said "[g]ive me your money." When Blake opened the cash register, the man shoved her aside and took all the bills in the register, leaving the coins. The man then left. He took approximately $120-$140.

Approximately one month later, on March 18, 2001, the McDonalds restaurant, across the street from the Heritage Inn, was also robbed. Joyce Heflin testified that she was working in the store as an assistant manager at that time. Shortly after she unlocked the doors that morning, at 6:00 a.m., a man wearing a green ski mask and a blue hooded sweatshirt entered. He grabbed her by her hair, "put something to [her] back," and pushed her to the office. Heflin testified that he stated "get in there, give

-

me the money."  After the store manager, Scott Benson, opened the safe, the man took the bank deposit bag.  The man then left.

Benson testified that the man wore jeans, a hooded sweatshirt and a "dark ski mask."  He described the man as a thin, black male, approximately 5 feet 11 inches tall, weighing approximately 170-175 pounds.  He stated that the man had one hand in his pocket "and there appeared to be a gun in there."  The man took over $3,000.

We first note that the Virginia Supreme Court has "defined hearsay evidence as 'testimony in court . . . of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.'" Jenkins v. Commonwealth, 254 Va. 333, 338-39, 492 S.E.2d 131, 134 (1997) (quoting Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977)).  "As a general rule, hearsay evidence is incompetent and inadmissible."  Neal v. Commonwealth, 15 Va. App. 416, 420, 425 S.E.2d 521, 524 (1992).  However, "[i]t is well established . . . that an out-of-court statement by a criminal defendant, if relevant, is admissible as a party admission, under an exception to the rule against hearsay."  Bloom v. Commonwealth, 262 Va. 814, 820, 554 S.E.2d 84, 87 (2001).  Thus, although Hurd's testimony amounted to hearsay, it was uniquely relevant to the issue of the identity of the perpetrator and thus, clearly

-

admissible pursuant to the party admission exception to the hearsay rule.

Additionally, we have consistently held that admissibility of evidence is within the broad discretion of the trial court, and the trial court's ruling in that regard will not be disturbed on appeal in the absence of an abuse of discretion. Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citing Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)). Indeed, "[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted." Harrell v. Woodson, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987).

Nevertheless, Jones correctly contends that "[g]enerally, evidence of other offenses is inadmissible if it is offered merely to show that an accused was likely to commit the crime for which he is being tried. There are, however, well-established exceptions to the general rule." Cheng v. Commonwealth, 240 Va. 26, 34, 393 S.E.2d 599, 603 (1990). Specifically, "evidence of other crimes or other bad acts is admissible when relevant to prove a material fact or element of the offense." Jennings v. Commonwealth, 20 Va. App. 9, 15, 454 S.E.2d 752, 755 (1995) (citing Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)). "[O]ne of the issues upon which 'other crimes' evidence may be admitted is that of the perpetrator's identity, or

-

criminal agency, where that has been disputed.  Proof of modus operandi is competent evidence where there is a disputed issue of identity."  Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 616 (1990).

Furthermore, "[e]vidence of other crimes, to qualify for admission as proof of modus operandi, need not bear such an exact resemblance to the crime on trial as to constitute a 'signature.'  Rather, it is sufficient if the other crimes bear 'a singular strong resemblance to the pattern of the offense charged.'"  Id. at 90, 393 S.E.2d at 616 (quoting United States v. Hudson, 884 F.2d 1016, 1021 (7th Cir. 1989)).  "That test is met where the other incidents are 'sufficiently idiosyncratic to permit an inference of pattern for purposes of proof,' thus tending to establish the probability of a common perpetrator."  Id. (quoting Hudson, 884 F.2d at 1021).

Moreover, "'[o]ther crimes' evidence bearing sufficient marks of similarity to the case on trial to establish the probability of a common perpetrator is . . . usually relevant."  Id. at 90, 393 S.E.2d at 617.  Whether the evidence is "otherwise admissible" is a question "that requires the trial court to weigh its probative value against its prejudicial effect."  Id.

The "other crime" presented to the jury in the present case, by way of Hurd's testimony, was not identical to the crimes on trial.  However, the similarities between the offenses, particularly the indications of a common modus operandi, strongly

-

support the trial court's ruling.  Indeed, the robberies, especially those of the Heritage Inn, "were sufficiently idiosyncratic and similar to each other to support an inference of a pattern of operation and the probability of [a] common perpetrator[]."  Chichester v. Commonwealth, 248 Va. 311, 328, 448 S.E.2d 638, 649 (1994).  Thus, we cannot say that under these circumstances, the trial court abused its discretion in ruling that the prejudicial effect of Hurd's testimony was outweighed by its probative value, and we find no error in the trial court's admission of that evidence.

Jones next contends the trial court erred in refusing to admit letters written by witness Chavonne Blackwell.  Jones argues that the letters were inconsistent with Blackwell's testimony at trial and were therefore admissible to impeach her testimony.  We disagree.

Code § 8.01-403 provides that:

> [a] party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse, by leave of the court, prove that he has made at other times a statement inconsistent with his present testimony; but before such last mentioned proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement.  In every such case the court, if requested by either party, shall instruct the jury not to consider the evidence of such inconsistent

-

statements, except for the purpose of contradicting the witness.

Thus, Jones is correct that prior inconsistent statements, under certain circumstances, can be used at trial to impeach the witness. Hall v. Commonwealth, 233 Va. 369, 375, 355 S.E.2d 591, 595 (1987). However, in the case at bar, the record demonstrates that Jones never brought the circumstances surrounding Blackwell's writing of the letters, nor the content of the letters, to Blackwell's attention during her testimony. Instead, Jones attempted to introduce the letters during his own testimony.

Accordingly, because Jones failed to lay the proper foundation for admission of the evidence, which requires the proponent to bring the circumstances of the supposed statement to the attention of the witness so that the witness can answer whether or not he or she has made such statement, we find no error in the trial court's decision to exclude it. See Edwards v. Commonwealth, 19 Va. App. 568, 571, 454 S.E.2d 1, 2 (1995) ("An attorney may impeach a witness in this manner, 'provided a foundation is first laid by calling his attention to the statement and then questioning him about it . . . .'" (quoting Hall, 233 Va. at 374, 355 S.E.2d at 594)).

Finally, Jones contends the trial court erred in finding the evidence sufficient, as a matter of law, to support his convictions. We again, disagree.

-

Applying well-established principles of appellate review, we must consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth. The burden is upon the Commonwealth, however, to prove beyond a reasonable doubt that [the defendant] was the perpetrator of the crimes. Additionally, circumstantial evidence is as competent, and entitled to the same weight, as direct testimony if such evidence is sufficiently convincing.

Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991).

Jones argues that the evidence was insufficient to establish he was the perpetrator of the crimes. However, we consider the evidence as a whole in deciding whether it is sufficient to support the jury's findings that Jones was the perpetrator of the crimes. See Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Id. (quoting Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)).

Here, when considered in the light most favorable to the Commonwealth, the evidence overwhelmingly supported the jury's conclusion that Jones perpetrated the crimes. Perhaps most importantly, Blackwell testified that Jones told her he committed both crimes. Blackwell further testified that on the same day of the McDonalds robbery, Jones gave Blackwell a $300 money order,

-

and bought her approximately $1,600 worth of merchandise for her home.  Therefore, based upon the totality of the evidence, we find no error in the jury's determination that the evidence established Jones was the perpetrator of both robberies.

For the reasons stated herein, we affirm Jones' convictions.

<u>Affirmed.</u>