124 F.3d 205
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United STATES of America, Plaintiff-Appellee,
v.
Dion ALEXANDER, Defendant-Appellant.
 No. 96-4179.
 United States Court of Appeals, Seventh Circuit.
 Aruged July 16, 1997.
Decided July 16, 1997.
 
 1
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division.
 
 
 2
 Before Hon. WILLIAM J. BAUER, Circuit Judge Hon. JOEL M. FLAUM Circuit Judge Hon. ILANA DIAMOND ROVNER, Circuit Judge
 
 ORDER
 
 3
 Dion Alexander was indicted for three crimes: robbery of a credit union on January 18, 1996, in violation of 18 U.S.C. §§ 2113(d) and 2 (Count 1); using and carrying a firearm during and in relation to that robbery, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 2); and another robbery of the same credit union on March 8, 1996, in violation of 18 U.S.C. §§ 2113(a) and 2 (Count 3). He filed pre-trial motions to suppress the identification testimony of two tellers at the credit union, Kimberlie Price and Tesha Harris-Thompson, the first of whom witnessed both robberies and the second of whom witnessed only the January 18 robbery. After holding hearings at which Price and Harris-Thompson testified, the district court denied the motions to suppress. At Alexander's jury trial, Price and Harris-Thompson were among the witnesses to testify. The jury acquitted Alexander on Counts 1 and 2 (relating to the January 18 robbery) and convicted him on Count 3 (relating to the March 8 robbery). The district court sentenced him to 72 months in prison. Alexander appeals, claiming the district court should have granted his motions to suppress the identification testimony of Price and Harris-Thompson. We affirm the judgment of the district court.
 
 I. Background
 
 4
 On January 18, 1996, two men entered the Communitywide Federal Credit Union ("Credit Union") in South Bend, Indiana. One man came to the window of teller Price, pointed a gun at her, and demanded money. The other man served as a lookout, waiting by the door and telling Price to hurry up. Shortly after the robbery, both Price and HarrisThompson, another teller who witnessed the robbery, gave descriptions of the robbers to police. The next day, Price and Harris-Thompson viewed a series of six photographs. Both selected the photograph of Dwight Neal, who eventually pleaded guilty to the January 18 robbery. A few weeks later, Price and Harris-Thompson looked at a second group of photographs; Alexander was depicted in photograph five.. Price selected photographs one and four. Harris-Thompson stated that she was seventy percent sure that photograph five showed one of the robbers. She thought that the person in photograph five was the lookout; she had said the same thing with respect to Neal's photograph at the prior viewing.
 
 
 5
 On March 8, 1996, a man entered the Credit Union, approached Price, wrote out a robbery demand note, and presented it to her. After receiving several thousand dollars, the robber fled. Immediately thereafter, Price announced that there had been a robbery. Harris-Thompson was not aware that a robbery had taken place until that announcement. Price gave police a description of the robber and told them that he was the same person who had robbed her before. Several blocks from the Credit Union, an officer spotted Alexander, who matched the general description of the man whom police saw running away from the Credit Union. The officer detained Alexander and drove him to the Credit Union. The officer then presented Alexander outside the drive-through window for possible identification. Price identified Alexander as having committed both robberies. When Alexander was brought around to the picture window at the front of the Credit Union, Harris-Thompson recognized him as one of the January 18 robbers.
 
 II. Analysis
 
 6
 In this appeal, Alexander argues that the district court should have suppressed the identification testimony of both Price and Harris-Thompson. The government responds in part by contending that the admissibility of Harris-Thompson's testimony has no bearing on this appeal. As the government notes, Harris-Thompson witnessed only the January 18 robbery. She was unaware of the March 8 robbery until it was over. Her identification of Alexander did not tend to show that Alexander committed the March 8 robbery. Rather, it served only as evidence that Alexander was one of the men she had seen committing the January 18 robbery. Because Alexander was acquitted of the January 18 robbery, he was not prejudiced by error (if any) in the admission of Harris-Thompson's testimony. We conclude that it would be pointless to consider whether her testimony should have been suppressed.
 
 
 7
 The government does address the admissibility of Price's testimony. It may be that the jury rejected Price's identification of Alexander as perpetrating the March 8 robbery. The jury was apparently not convinced by Price's testimony that Alexander was one of the robbers on January 8. Since Price thought that Alexander committed both robberies, one might infer that the jury rejected her testimony altogether and relied on other evidence. Indeed, the government appears to make a similar inference by arguing that any error in failing to suppress Price's testimony was harmless. See infra at n. 2. Nevertheless, the government also examines the reliability of Price's identification. We shall do the same.
 
 
 8
 This court engages in a two-step analysis of challenges to identification testimony. The defendant must first show that the identification procedure used was unduly suggestive. United States v. Hall, 109 F.3d 1227, 1237 (7th Cir.1997) (citing United States v. Funches, 84 F.3d 249, 253 (7th Cir.1996)). If it was, then the court must determine whether, given the totality of the circumstances, the testimony was reliable despite the suggestive procedures. Id. at 1237-38 (citing Funches, 84 F.3d at 253). The court looks to five factors to assess reliability: "(1) the witness's opportunity to see the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's description given prior to the suggestive procedure; (4) the level of certainty the witness demonstrates in making the identification; and (5) the amount of time between the initial viewing and the identification procedure.' " United States v. Zolicoffer, 92 F.3d 512, 515 (7th Cir.1996) (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977)); see also, e.g., Hall, 109 F.3d at 1238 (presenting one of several essentially identical statements of the five factors that this court has employed).
 
 
 9
 In engaging in the first step of the analysis, the district court looked to this court's opinion in United States v. Sleet, 54 F.3d 303 (7th Cir.1995). As the district court noted, the identification procedure used after the March 8 robbery was a showup, which "occurs when only one suspect is shown to [the] witness." Sleet, 54 F.3d at 309 (quotations omitted). Showups are "proper and not unduly suggestive under certain circumstances." Id. (quotation omitted). "For example, immediate showups may, at times, serve legitimate law-enforcement purposes, as they allow identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons." Id. (quotation omitted). The district court followed Sleet's lead and chose not to determine whether this showup was unduly suggestive, given that the totality of the circumstances showed that the identification by Price was reliable. Id. at 310 (citations omitted). We shall do likewise, especially since the government does not respond to Alexander's argument on appeal that the showup was improper.
 
 
 10
 As noted, this court looks to five factors to assess the reliability of an identification. The first factor is the witness's opportunity to see the criminal at the time of the crime. At the suppression hearing, Price estimated that Alexander was in the Credit Union approximately ten to twelve minutes. Hearing Tr. of May 20, 1996 (hereinafter "H.T."), at 14, 32-33. Even if Price's estimate were greatly overstated, she would clearly have had sufficient opportunity to view the robber. See United States v. Clark, 989 F.2d 1490, 1495-96 (7th Cir.1993) (less than two minutes is sufficient) (collecting cases); Walton v. Lane, 852 F.2d 268, 273 (7th Cir.1988) (even a few seconds would be sufficient). Price also testified that the robber stood less than two feet from her, that the lighting conditions were good, that she does not have vision problems, and that she had no trouble seeing the robber. H.T. at 14, 20. All of this testimony indicates that Price had ample opportunity to view the robber.
 
 
 11
 Alexander does note that the robber had his hair covered up by a hood during the robbery. H.T. at 33, 35. However, that would not prevent Price from seeing the robber's face, determining his height, or noticing his clothing--in other words, from forming an accurate impression of the robber. Alexander also suggests that Price testified that the robber's head was tilted downward throughout the crime. However, Price stated merely that the robber's head "was tilted down as he was writing, and then it was directly at me when he passed me the note." Id. at 33. The only indication of how much time it took the robber to write the demand note was Price's statement that it was not "too quick." Id. at 14-15. Even if the robber was writing during much or most of the robbery, it appears that Price still had sufficient opportunity to see the robber's face.
 
 
 12
 The second factor is the witness's degree of attention. Alexander's only argument on this factor is that fear, excitement, and anxiety would affect one's degree of attention. However, as cases cited by the government indicate, the dramatic nature of a crime could just as easily focus a witness's attention. See Sleet, 54 F.3d at 310; Walton, 852 F.2d at 274. Moreover, Price had received training, through the staging of mock robberies, on how to identify people during a robbery. H.T. at 6-7. Such training presumably assisted Price in paying attention to the robber's appearance. See United States v. Watson, 587 F.2d 365, 367 (7th Cir.1978) ("The identifying bank employee was not an outside casual observer but an experienced teller with special identification training."), cert. denied sub nom. Davis v. United States, 439 U.S. 1132 (1979); see also Clark, 989 F.2d at 1496 (citing Watson ).
 
 
 13
 Alexander presents no argument on the third factor, the accuracy of the witness's description prior to the identification procedure. He has thus forfeited reliance on this factor.[1]
 
 
 14
 Alexander makes only a weak argument on the fourth factor, the witness's level of certainty in making the identification. Alexander notes that Price was "pretty sure" that he was the robber when he stood before her with his hood down, but "positive" when he put the hood over his head. H.T. at 17, 36. Alexander contends that "if Price was positive about the identification, she would not have required Alexander to put the hood over his head." The problem with this argument is that the robber was wearing a hood during the robbery. Id. at 17, 33, 35. It makes perfect sense that Price's certainty would increase once Alexander was wearing a hood as the robber had.
 
 
 15
 Alexander practically concedes that the final factor, the amount of time between the initial viewing and the identification procedure, favors the government's position. It was only about ten minutes between the end of the robbery and the showup. Id. at 16. This is clearly a sufficiently short time for a reliable identification. See Clark, 989 F.2d at 1497 (collecting cases).
 
 
 16
 In sum, Price's identification was reliable. The district court did not err in denying the motion to suppress Price's testimony concerning her identification of Alexander.[2]
 
 
 17
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Our sense is that this factor does not favor either Alexander or the government. Price testified that she told the police about the robber's dark-blue hooded sweatshirt, his blue-and-white bandana, and the lack of makeup on his face. H.T. at 16. She did not testify to any further description. Id. A police officer found a blue bandana and a blue hooded sweatshirt within a few blocks of the Credit Union, bolstering Price's description. On the other hand, Price did not provide a description which showed the accuracy of her subsequent identification
 
 
 [2]
 Thus we have no occasion to consider the government's argument that any error in admitting Price's identification testimony was harmless in light of the other evidence against Alexander